127 So.2d 319 (1961)
E. R. JOHNSTON, Administrator, et al., Plaintiffs-Appellants,
v.
Mrs. Florence J. BEARDEN et al., Defendants-Appellees.
No. 9381.
Court of Appeal of Louisiana, Second Circuit.
February 2, 1961.
Rehearing Denied March 10, 1961.
Certiorari Denied April 24, 1961.
*320 Dhu and Lea S. Thompson, Monroe, Waltman & Napper, Ruston, for appellants.
Barham, Wright & Barham, Ruston, Rabun & Dawkins, Farmerville, for appellees.
Before HARDY, AYRES, and BOLIN, JJ.
AYRES, Judge.
This is an action to annul and erase from the conveyance records, as null and void, two deeds wherein Mrs. Stella King Johnston purportedly conveyed to her daughter, Mrs. Florence Johnston Bearden, a tract of land comprising 220 acres, for a recited consideration of $3,300, and an undivided ½ interest in and to another tract of 100 acres for a recited consideration of $750. Both are purported to be cash transactions.
Mrs. Johnston's children and grandchildren, other than Mrs. Bearden, on learning of the execution and recordation of the aforesaid deeds, filed a suit seeking the appointment of a curator for Mrs. Johnston and, based on that application, E. R. Johnston was named administrator pro tempore and he, thereupon, in that capacity, instituted this action to set aside said deeds on the grounds that Mrs. Johnston, at the time of the execution of said documents, was not of sufficient mental capacity to know and understand the purport of or to consent to the execution of those deeds; that the deeds were simulated and no real consideration *321 was paid for the property; and that the transactions were illegal, null and void because of lesion. Before the issues thus presented could be put at issue and tried on the merits, Mrs. Johnston died, whereupon E. R. Johnston, after due proceedings had, was appointed administrator of her succession. The administrator, in his individual as well as in his representative capacity, was thereafter joined by J. R. Johnston, O. F. Terrall, Verlin Roberts Hammons, and Louise Roberts Averitte, all of whom were substituted as parties plaintiff and who are, with the defendant, Mrs. Florence Johnston Bearden, the sole and only heirs of Mrs. Stella King Johnston.
The principal grounds upon which plaintiffs attack the validity or reality of the aforesaid deeds is, as set forth in the original and supplemental petitions, that they are mere simulations, pure and simple, in that no consideration was paid or intended to be paid for the property, and that the transactions by which they were procured constitute a fraudulent scheme of Mrs. Bearden, participated in and assisted by her husband, daughter, and son-in-law to secure the property without the payment of any price therefor. Other grounds of attack are (1) that Mrs. Stella King Johnston, 84 years of age at the time the instruments were executed, was mentally incompetent; (2) that, if said transactions be deemed donations, they were null and void because the donor divested herself of the whole of her property without retaining sufficient for her own subsistence; (3) further, if said transactions be deemed donations, they are null and void as constituting donations in disguise; (4) that the consideration, if any, paid, was less than ½ the value of the property and, hence, null and void because of lesion beyond moiety; and (5) that, in any event, said transactions infringed upon the legitime reserved to them by law. The defendants, Mrs. Bearden and her husband, S. J. Bearden, contend that the transfers were made in good faith and for a good, valid, and sufficient consideration.
The trial court concluded that plaintiffs did not sustain, by a preponderance of the evidence, that the transactions constituted simulations, or were donations in disguise, or were induced by fraud. It was further held that the deeds could not be attacked for lesion by only a portion of the heirs. Accordingly, plaintiffs' demands were rejected and they have appealed.
O. P. Johnston and Mrs. Stella King Johnston were pioneer residents of Union Parish. During their marriage, they acquired the property involved in this action. The husband made a dation en paiement of the 220-acre tract to his wife. Later, they moved to Morehouse Parish where they resided for many years. The husband died in 1954. The widow continued to live at their residence established in Morehouse Parish until June, 1956, when she made her home with her daughter, Mrs. Florence Johnston Bearden, and her husband. Thereafter, during the brief period Mrs. Johnston survived, Mrs. Morene Bearden Russell, daughter of Mr. and Mrs. Bearden, and her husband, Sam Russell, frequently visited in the Bearden home. Mrs. Russell ran errands for and drove her grandmother wherever she desired to go, and occasionally was entrusted, to some extent, with the business affairs of Mrs. Johnston, with whom she had become a confidant.
On August 14, 1956, Mrs. Johnston, after having made her home with the Beardens for six or eight weeks, was driven to Bastrop where she withdrew, from the bank, the sum of $2,794.70 in two withdrawals on the same date, in the respective sums of $1,000 and $1,794.70, thus closing her account with the bank. Two weeks later, August 28, 1956, Mrs. Russell drove her grandmother, father and mother to Farmerville, where Mrs. Johnston executed the aforesaid deeds to her daughter. For funds required for the purported purchase of said property, Mr. and Mrs. Bearden, after arriving in Farmerville, negotiated a loan from The Farmerville Bank of $4,050, for which they executed their note payable December 28, 1956. To secure this loan, they *322 pledged, as collateral, a time certificate of deposit issued to them by the bank in the sum of $5,189.86. The $4,050.00 loan, having been obtained in currency, was placed in a sack and delivered to Mr. and Mrs. Bearden who thereafter repaired to the courthouse, where, in the office of the clerk of court, the deeds, already prepared, were read and signed. The money was then counted out to Mrs. Johnston who placed it in her purse. After filing the deeds for record, the parties immediately returned to the Bearden home. Soon thereafter, Mrs. Johnston became ill and was eventually taken to a clinic in Farmerville where she died December 3, 1956.
During Mrs. Johnston's lifetime, Mr. and Mrs. Bearden made no inquiries or asked any questions as to the whereabouts or the disposition Mrs. Johnston made of the sum of $6,844.70 in cash, which had come into her possession through the closing of her account with the bank in Bastrop and through the purported sales herein involved. Nor did they, after Mrs. Johnston's death, manifest any interest in, or concern about, said funds; nor did they make any search or inquiry relative thereto.
Mrs. Russell was not called as a witness during the trial. Plaintiffs' attempt to call her under cross-examination, by reason of an agency relationship with her grandmother, was objected to and the objection was sustained. However, in her discovery deposition, which was filed in evidence, Mrs. Russell testified that her grandmother placed with her the $4,050 received from the sale of the property. Moreover, the bank records disclosed that Sam Russell, August 31, 1956, the third day following the aforesaid sales, deposited with The Farmerville Bank, $4,200.16, of which amount $1,010 was cash, and, on that very day, issued a check to the bank on that account to pay the note given by Mr. and Mrs. Bearden for the money with which to make the purchases of the property herein concerned.
In regard to this deposit, it may be pointed out that Russell's testimony was vague, equivocal, and indefinite, particularly as to the amount of cash deposited, until confronted with the deposit slip. Moreover, his testimony as to the manner in which he claimed to have come into possession of this cash is likewise very unsatisfactory and unconvincing. Of the same character was Mrs. Russell's testimony in her discovery deposition. For instance, when questioned as to the disposition made by her of the funds of her grandmother, she stated she placed the funds in a bank but, on being pressed as to what bank, she disclosed that it was a toy bank which she kept at her residence. Defendants, in counsels' brief, say:
"The conclusion reached by the plaintiffs in their brief to the effect that the evidence shows that the Four Thousand Fifty and No/100 ($4,050.00) Dollars that was delivered to Mrs. Johnston at the time of the execution of the deeds was afterwards obtained from Mrs. Johnston, directly or indirectly by Mr. or Mrs. Bearden and thereafter deposited to the account of Mr. and Mrs. Russell and a check drawn by Mr. Russell on this account to pay the note that S. J. Bearden had signed, is merely a speculation, a suspicion and a conclusion arrived at without any basis in evidence whatsoever. There is not one scintilla of direct evidence to show, and in fact the evidence shows differently than that the money was ever received either directly or indirectly by either Mrs. Florence Johnston Bearden or S. J. Bearden.

"Plaintiffs' theory that the money that was paid to Mrs. Johnston in the sum of Four Thousand Fifty and No/100 ($4,050.00) Dollars found its way from Mrs. Johnston into the hands of Mrs. Russell, of course, is true, but their projection that ultimately these were the same funds which paid off the note of S. J. Bearden and Florence Bearden to the bank wherein they had received the money to pay for the *323 property, is exploded by the testimony of Sam Russell, who stated that he paid or gave S. J. Bearden a check with which to pay the note to the Farmerville Bank and it is established beyond any doubt that Mr. Russell was financilly able to do this and did so in order to save his father-in-law the expense of the payment of interest for this money, in view of the fact that he, said Mr. Russell, had certain sums which he was not using at the time and could spare with all ease." (Emphasis supplied.)
The answer to the contentions made is that while Mr. and Mrs. Bearden did not receive, physically, the funds or currency after delivery was made to Mrs. Johnston, yet those funds were at least constructively received by them when they were subsequently deposited in the bank and a check drawn thereon in payment of the loan by which the funds were initially obtained from the bank. Nor do we see it would matter that Russell, when he issued the check in payment of the loan, had other and individual funds in that or other accounts with the bank on which he could have drawn the check, or that it would have made any difference, under the circumstances existing here, if Russell had paid the loan from other funds of his after he had received the funds purportedly paid for the property.
Although an authentic act is full proof of the agreement contained in it, as between the contracting parties and their heirs and assigns, unless it be declared and proved a forgery (LSA-C.C. Art. 2236) and parol evidence is not admissible against or beyond what is contained in such acts (LSA-C.C. Art. 2276), nevertheless forced heirs have the right to annul absolutely and by parol evidence, the simulated contracts of those from whom they inherit and, in this, they are not restricted to the legitime (LSA-C.C. Art. 2239). Moreover, sales of immovable property by parents to their children may be attacked by the forced heirs as containing donations in disguise if they can prove no price was paid or that the price was below ¼ of the real value of the property at the time of the sale. LSA-C.C. Art. 2444. Thus, under the authority of these codal provisions, parol evidence is admissible in an action by forced heirs to annul simulated contracts of those from whom they inherit; and, if such contracts are established as simulated, they are annulled in their entirety. Cole v. Cole, 39 La.Ann. 878, 2 So. 794; Spencer v. Lewis, 39 La.Ann. 316, 1 So. 671; Bauman v. Pennywell, 164 La. 888, 114 So. 723; Succession of Valdez, La.App. Orleans, 1950, 44 So.2d 151, 158; 29 Tulane Law Review, 22, 49, "Some Aspects of Simulation in France and Louisiana."
What, however, is the character of evidence required in actions of this kind? As often happens in this sort of case, plaintiffs may not have any direct proof available to sustain their charges and they may, thereby, be required to rely upon circumstantial evidence. In this connection, it was held, in Dietz v. Dietz, 227 La. 801, 80 So.2d 414, 416, that, in conformity with the provisions of Art. 2444 of the LSA-Civil Code, plaintiffs had the burden of proving by preponderating or convincing evidence, that the sales attacked were without consideration, but that such proof need not establish the fact to an irresistible conclusion or certainty. In pointing this out and in referring to the authorities relied upon by the trial court in the cited case, it was stated in the opinion of the Supreme Court:
"The holdings in those matters are to the effect that evidence which merely casts a suspicion on the verity of a sale by a parent to his child is inadequate to justify a decree of annulment and it is remarked in Moore v. Wartelle [39 La.Ann. 1067, 3 So. 384] and repeated in Blackman v. Brown [155 La. 959, 99 So. (711) 713], that:
"`The law does not favor actions by forced heirs to undo transactions *324 of their ancestors as done in fraud of their rights. Such actions can only succeed where the proof adduced in support thereof is convincing, if not irresistible.'
"While it is indubitably correct that the proof adduced in these cases must be sufficient to convince the court that the act is a sham, we entertain grave doubt as to the soundness of the statement in Moore v. Wartelle and Blackman v. Brown, that the law does not favor actions of this type by forced heirs. It appears to us that Article 2444 is founded on the cardinal principle of the Louisiana law of inheritance of equality between heirs of the same degree, see Montgomery v. Chaney, 13 La.Ann. 207, and that this was the underlying reason for its incorporation in our Civil Code.
"So we hold, in conformity with the provisions of Article 2444, that plaintiffs had the burden of proving by preponderating or convincing evidence that the sales attacked herein were without consideration. But this does not mean that the defendants were relieved of all obligation to produce evidence readily available to them in rebuttal of circumstantial proof, when that proof casts doubt upon the verity of the transactions in contest. * *"
It was there held that where plaintiffs established a prima facie case, the burden was then placed squarely upon the defendants to establish the reality of the sale.
In Howard v. Howard, La.App.2d Cir., 1957, 96 So.2d 345, 348-349, an observation was made which could properly be applied here. There, it was stated:
"* * * We concede the principles of law urged on behalf of defendants that the charge of fraud is most serious; that the burden of establishing fraud rests upon the one who alleges its existence, which burden is discharged only by legal and convincing evidence; that fraud is never presumed and that it must be established by exceptionally strong proof. Sanders v. Sanders, 222 La. 233, 62 So.2d 284, and cases cited therein.
"However, we point out the equally well recognized principle that the action `en declaration de simulation' falls in a category of fraudulent conduct which, under our jurisprudence, is somewhat less demanding of, and less burdensome upon, the party who alleges the simulation.

* * * * * *
"Second, the existence of suspicious circumstances, among which are to be considered the close relationship of the parties to the sale and the payment of the consideration in currency, are entitled to great weight, and the existence thereof may be accepted as evidence of the simulated character of the sale. Agricultural Supply Company, Inc. v. Lavigne, 179 La. 1030, 155 So. 764; Dorsey v. Ashford, La.App., 200 So. 176.

"Circumstantial evidence as `well as direct evidence is acceptable in establishing a simulation. XVII Tulane Law Review, 470, and cases cited therein.
"In view of the last recited principles we feel constrained to carefully analyze the nature and effect of the circumstantial evidence which is reflected by the record in this case.
"We think it is significant that although Theodore Howard and his sister both testified that the consideration was paid in the presence of the latter's husband, he was not called as a witness. The fact that May Ola Roberts was in possession of the substantial sum of $2,800 in cash, represented by currency, all in twenty dollar bills, which, according to her testimony, she kept in her house, is, in itself, a highly suspicious and almost inexplicable circumstance. When questioned as to *325 how she had acquired such a sum of money, May Ola Roberts testified that it had been accumulated over a period of almost 30 years as proceeds of her farming operations, yet she could not name one transaction nor one amount in connection with the sale of any farm produce. Nor could she identify the source of this alleged income by the production of a single scrap of written evidence. No effort was made to explain the most unusual circumstance which is implicit in the possession of $2,800, all in twenty dollar bills." (Emphasis supplied.)
It has thus been recognized and the jurisprudence is well established that the nature of a simulated contract may be established by circumstantial evidence. In commenting upon the burden of proof in that regard, the court, in Smith v. Smith, 239 La. 688, 119 So.2d 827, 831, made this further observation:
"This Court has recognized that simulation, because of its nature, can usually be proven only by indirect and circumstantial evidence (Summers & Bannin v. Clarke, 32 La.Ann. 670; King v. Atkins, 33 La.Ann. 1057; Succession of Dickson, 37 La.App. 795), so that, if one alleging a simulation produces evidence of circumstances which create highly reasonable doubts or suspicions as to the honesty of the transaction, a prima facie case is considered as having been made out and the burden of proof is shifted to the defendant to show that a valid sale existed. New Orleans Acid & Fertilizer Co. v. O. Guillory & Co., 117 La. 821, 42 So. 329; Leon Godchauz Co. v. Di Maggio, 133 La. 199, 62 So. 631; First National Bank of Ruston v. Jones, 186 La. 269, 172 So. 155; Howard v. Howard, La.App., 96 So.2d 345." (Emphasis supplied.)
A factual situation very similar to the one presented here was given consideration in Barras v. Barras, 111 La. 284, 35 So. 553, 558. There, action was brought by six of seven children to set aside an act of sale by a father to the other child. With reference to the money that was recited as the consideration for the execution of the instrument, the defendant testified that he paid it to his father and that his father put the money in the safe at the house, and that only his father had a key to the safe. In avoiding the act of sale as a simulation, the court stated:
"* * * When men propose evading prohibitory provisions of law, human ingenuity is taxed to so place matters as that some of the testimony adduced in connection therewith should be true, while other matters, which, if brought out, would utterly destroy its effect, should be skillfully concealed. The facts of this case go very strongly to establish simulation. The whole situation was out of the usual course. Le Blanc v. Bertant, 16 La.Ann. [294] 298. It is difficult to understand why this old man owning the property without incumbrances should have been willing without a motive to dispose of the whole of the same in block, and substitute for it money, with all the annoyances which its possession would carry with it to a person of his age; and it is difficult to understand what became of the money said to have been paid to him in the short interval between the date of the sale and that of the father's death. That the son, who, for so many years had taken charge of his father's business, should become so completely and suddenly indifferent to what should become of this money in which he was interested as a prospective heir, and that he should have so utterly lost sight or knowledge of it, unduly taxes credulity. * * *."
It is even more difficult to understand why Mrs. Johnston would have desired to dispose of all her property for money when, just two weeks before the execution of the deeds, she had withdrawn from the bank $2,794.70 in cash. The indifference and *326 lack of interest manifested by Mrs. Bearden, as well as by her husband, in her mother's money before and after her death is unreasonable and inconsistent with human nature, and the testimony in attempted explanation is incredible.
A similar factual situation was also presented in Olivier's Minor Children v. Olivier, 215 La. 412, 40 So.2d 803, wherein plaintiff, as tutrix for her two minor children, instituted an action to set aside a deed on the grounds that it was a simulation. The deed recited that, of the purchase, $1,170 was paid in cash and a note given for the balance of $1,000. In declaring the sale a simulation, the court observed an apparent weakness existed in defendant's testimony wherein he stated that within 30 days after he supposedly gave the aforesaid sum to his 73-year-old mother, he allowed her to carry it away in her purse and take it to her home, where, except for tenants, she lived alone. He was nevertheless unconcerned for her safety in keeping such a large sum around the house or as to what disposition she made of it.
In contending that plaintiffs have not sustained their burden of proof, defendants submit, and correctly so, that, in proper cases fraud is a very serious charge and is never presumed, and cite Sanders v. Sanders, 222 La. 233, 62 So.2d 284, 286, wherein the Supreme Court stated:
"In the jurisprudence of this court it has been said that the charge of fraud is a most serious one; that one who alleges fraud has the burden of establishing it by legal and convincing evidence since fraud is never presumed, and that to establish the fraud exceptionally strong proof must be adduced. Strauss v. Insurance Co. of North America, 157 La. 661, 662, 102 So. 861; Gamier v. Aetna Ins. Co. of Hartford, Conn., 181 La. 426, 159 So. 705; Mutual Life Ins. Co. of New York v. Radial, 184 La. 430, 166 So. 129; Metcalf v. Monsour, 195 La. 570, 197 So. 235; Mente & Co., Inc., v. Roane Sugars, Inc., 199 La. 686, 6 So.2d 731; American Guaranty Co. v. Sunset Realty & Planting Co., Inc., 208 La. 772, 23 So.2d 409. It has also been said that evidence showing that the fraud was probable or that the circumstances partook of a suspicious character is not sufficient, and that the fraud must be established by proof stronger than the mere preponderance of the evidence. Angichiodo v. Cerami, D.C., 35 F.Supp. 359; Fort v. Metayer, 10 Mart. (O.S.) 436; Charrotte v. Louisiana College, 1 La.App. 438; Woodward v. Barringer, La.App., 24 So.2d 200."
We are in complete accord with the aforesaid holding and the pronouncement made therein as to charges of fraud generally. However, as shown hereinabove, the pronouncements in the aforesaid case, while appropriate to actions involving fraud generally, is inapplicable to situations where forced heirs seek to set aside and annul transactions of those from whom they inherit as simulations or as donations in disguise. The authorities thus relied upon by the defendant are inapposite here.
We are convinced, for the reasons herein stated, that the aforesaid transactions were unreal, no consideration was paid therefor, and that the deeds were simulations, pure and simple, and attempted fraudulent donations in disguise, and, as such, null and void. We therefore conclude that plaintiffs have sustained the burden of proof incumbent upon them. This conclusion obviates any necessity for prolonging this opinion by a further discussion and consideration of the merits of the other issues presented in this controversy.
Defendants contend that the trial court should not be reversed upon a finding of fact unless manifestly erroneous. While it is true, where the issues presented are factual in nature, great weight should be accorded the conclusions and findings of *327 the trial court, nevertheless, it is the constitutional duty of appellate courts to consider questions of fact, and appellants are entitled to the performance of that duty by the court. Pursuant to such constitutional duty, an appellate court should give consideration to questions of fact where presented as issues for determination and to exercise its judgment thereon. Brown v. Louisiana Ry. & Nav. Co., 147 La. 829, 86 So. 281; Esteve v. Continental Southern Lines, La.App. Orleans, 1955, 83 So.2d 404, 408; Wooten v. Thompson, La.App. 1st Cir., 1953, 69 So.2d 557, 564.
Where, in a proper analysis of the facts, an appellate court differs with the trial court or jury, it is its duty to reverse the trial court. Wooten v. Thompson, supra. In this connection, the position of an appellate court was properly stated by our brethren of the Orleans Court of Appeal, in Owens v. Felder, 35 So.2d 671, 672, wherein Judge Regan, as the author of the opinion, said,
"We are reluctant to reverse the finding of a trial court based primarily on questions of fact, but in a case, such as we are presently analyzing, it is a self evident principle that it is occasionally easier to perceive fallacies and inconsistencies contained in the record by a comparison of the various portions of the transcribed record with other pertinent portions than it is to accurately observe and catalogue them while listening to the oral evidence of the various witnesses who testified during the course of the trial."
See, also, Anderson v. Morgan City Canning Co., La.App. Orleans, 1954, 73 So. 196, 201; Jacobs v. Landry, La.App. Orleans, 1955, 82 So.2d 481. However, in reversing the judgment of a trial court or the verdict of a jury, appellate courts are not ipso facto, or otherwise, casting any aspersions upon the honesty, integrity, and sincerity of the judge or jury. State ex rel. Burns v. Fornea, La.App. 1st Cir., 1955, 82 So.2d 463, 477.
Accordingly, for the reasons assigned, the judgment appealed is annulled, avoided, reversed and set aside, and
It is now ordered, adjudged and decreed that the purported sales from Mrs. Stella King Johnston to Mrs. Florence J. Bearden, dated August 28, 1956, pretending to convey the following-described property, to-wit:
South half of the northwest quarter of southeast quarter (S½ of NW¼ of SE¼); north half of southwest quarter (N½ of SW¼); east half of northwest quarter (E½ of NW¼) and southwest quarter of northwest quarter (SW¼ of NW¼), Section 18, Township 19 north, Range 2 east,
as recorded in Book 186, page 452 of the Conveyance Records of Union Parish, Louisiana, and the following-described property, to-wit:
All of her undivided right, title, and interest in the west half of northeast quarter (W½ of NE¼) and north half of northwest quarter of southeast quarter (N½ of NW¼ of SE¼), Section 18, Township 19 north, Range 2 east,
as recorded in Book 186, page 451 of the Conveyance Records of Union Parish, Louisiana, be and the same are hereby annulled and declared null and void, without force or effect, and, as such, are ordered canceled and erased from the conveyance records of Union Parish, Louisiana.
It is further ordered, adjudged and decreed that Mrs. Florence Johnston Bearden and S. J. Bearden, defendants-appellees, pay all costs, including the cost of this appeal.
Reversed and rendered.