BOLIN, Judge.
Pan American Petroleum Corporation, T. L. James, Inc., and General American Oil Company of Texas provoked this concursus proceeding to determine the proper disposition of accrued funds representing oil and gas runs from certain land located in Claiborne Parish, Louisiana. In order to decide this concursus the court was called upon to decide title to some 720 acres which embraced the acreage in production.
Made defendants are Frank Alexander and Hobert Alexander, legatees under the will of Mary Ann Washington, deceased; and Adlean Washington Anderson, Alice Washington McGee, Beatrice Washington Hunt, Eula Lane Washington, Carrie Lee Washington, and Alma L. Washington (also known as Charlie Ray Washington) heirs-at-law of their father, Alma Washington, deceased. A curator was appointed to represent these latter heirs.
Following trial on the merits the lower court awarded judgment in favor of the six heirs of Alma Washington and against defendants Frank and Hobert Alexander, based on the determination that certain instruments of record were not valid deeds but simulations. The Alexanders have appealed.
All claimants in this concursus trace their title to Frank and Emma Washington who at one time owned approximately 720 acres of land. Both Frank and Emma died intestate. Their successions were opened in 1935. Alma Washington, one of the surviving children, was placed in possession of a one-ninth (%) interest, disregarding a deed previously executed by Alma in which he purportedly conveyed his interest to his sister Mary Ann Washington for a recited consideration of $600. The judgment of possession likewise ignored constables’ sales of the interests of Alma and Otis, another heir, which interests had been repurchased by Mary Ann Washington in 1930.
On June 15, 1938, Alma Washington executed an instrument in which he stated he had been placed in possession of the one-ninth interest in error; that it belonged to Mary Ann Washington and he was quit-claiming it to her. Alma Washington died intestate in 1944, his succession was opened and his heirs placed in possession of his other property which did not include the property here in dispute.
On September 13, 1957, Mary Ann Washington executed and filed for record an affidavit in which she stated she knew nothing of the deed from Alma Washington to her or of the quitclaim deed. She stated she paid no consideration for these purported transfers and desired to repudiate and renounce them.
Shortly thereafter, Mary Ann Washington executed two. instruments, in the form of deeds, in which she attempted to recon-vey to various Washington heirs interests in ’the 720 acres of the Washington lands. Errors of description appear in both deeds but the total amount conveyed to the children of Alma Washington in these two transactions was an undivided one-ninth (%) interest which is the interest Alma had inherited. Mary Ann Washington filed another instrument on December 31, 1958, in which she stated she was correcting the previous deed. This latter instrument, like the other two deeds, stated the consideration was the placing of the interests in the names of the rightful owners.
All the foregoing instruments were introduced and filed in evidence, without objection, pursuant to a pre-trial agreement.
Before execution of the instruments described above, and during the years 1952 and 1953, the Washington heirs executed oil and gas leases to the ancestors in title of plaintiffs. A portion of the lands covered by these leases was included in producing oil and gas units. The funds deposited in the court which form the basis of *645 this litigation represent an undivided three-tenths (3/io) interest in the royalties from production under certain of these lands which had been accredited to Mary Ann Washington.
On February 16, 1960, Mary Ann Washington died leaving a will in which she bequeathed all her property to Frank and Hobert Alexander, the defendants-appellants who oppose the Alma Washington heirs in this concursus.
It is contended by appellants the conveyances from Alma to Mary Ann were authentic acts, executed in good faith for a valuable consideration. As a consequence, they allege they presently own the full three-tenths interest of Mary Ann Washington. They further contend the heirs of Alma Washington are estopped to deny the authenticity and validity of the several acts of conveyance to Mary Ann.
Appellants urge on the other hand that the several instruments wherein Mary Ann Washington purported to reconvey an interest in the property in dispute to the children of Alma Washington and others were, and are, invalid for the reason that she received no consideration, or an inadequate consideration, for such transfers. It is alleged, in addition, that the said conveyances were void as donations.
\
• •’ Appellants concede the documents described were introduced and filed in evidence without objection. Nevertheless it is strenuously urged here, as it was in the trial below, that parol evidence is inadmissible, under Louisiana Civil Code Articles 2275 and 2276, to vary the terms of these written instruments. Over these objections the lower court allowed two witnesses, Fred Jackson, an attorney, and Roosevelt Washington, to explain their understanding of why the various documents referred to ■were executed.
Appellees contend the deeds executed by their father to Mary Ann Washington were simulated sales, executed without consideration, merely for convenience, and are void as to forced heirs under Louisiana Civil Code Article 2239, which provides:
“Counter letters can have no effect against creditors or bona fide purchasers ; They are valid as to all others; but forced heirs shall have the same right to annul absolutely and by parol evidence the simulated contracts of those from whom they inherit, and shall not be restricted to the legitimate [legitime].”
Defendants represented by curator claim attorney fees and costs in this proceeding which claims are denied by all other defendants.
The district judge, after a careful review of the facts delineated above, stated the crucial issue depended upon a determination of the true nature and intention of the several instruments of record between Alma Washington and Mary Ann Washington. His reasons for judgment, with which we are in accord, so concisely sum up the evidence and clearly state the basis for his legal conclusions that we shall adopt his language as our own:
“The evidence adduced in this matter is clearly convincing to the court that the interest acquired by Mary Ann Washington at the constable sale of the property of Alma Washington and Otis Washington was acquired by Mary Ann Washington, by agreement, for the benefit of the Washington family and for the purpose of restoring to each of the children his full share in the succession. It is ’undisputed that the funds that she used in the purchase of the property belonged to the Succession of Frank and Emma Washington and that it was understood that she would purchase and hold this property in a trust capacity because of certain indebtedness affecting the interests of her said two brothers.
“After the death of Mary Ann Washington, her succession was opened, will probated, and Hobert Alexander qualified as executor. During the administration of this succession, the Pan American *646 Petroleum Corporation, which paid the royalties under the lands involved, recognizing that there might be a dispute as to the ownership of the one-ninth interest of Alma Washington, mailed seven checks to Mary Ann Washington. One of these checks covered her interest which was independent of the interest of Alma Washington. The remaining six were joint checks payable to Mary Ann Washington and to the several heirs of Alma Washington (the defendants represented by curator herein), the total covering the one-ninth interest which Alma Washington had inherited from his parents.
“It is interesting to note, that on December 9, 1960, Hobert Alexander, as executor of Mary Ann Washington’s estate, acting through his attorney, Fred L. Jackson, Esq., returned checks to Pan American Petroleum Corporation requesting that the same be reissued so that the six children of Alma Washington would get their checks without Mary Ann Washington being named as co-payee. In the letter of transmittal, the said attorney went on to explain that the estate of Mary Ann Washington had no claim or interest in those checks.
“At the trial of this matter Mr. Jackson testified that he had represented Frank and Hobert Alexander in many lawsuits, as well as in the succession of Mary Ann Washington, that he had advised with Mary Ann Washington over the years on many matters and had assisted in the completion of many of the correction instruments mentioned above. He stated that Mary Ann Washington had told him that the one-ninth interest which is involved in this litigation belonged to the children of Alma Washington, and that she had no interest in it and she did everything she thought was necessary to replace title to this interest in these children.
“Roosevelt Washington, a brother of Mary Ann Washington and Alma Washington, testified that Mary Ann was a spinster and for this reason the brothers and sisters selected her to hold the property of various ones of them in her name for their benefit. He further testified that the funds used in the purchases at the constable sales were funds belonging to the succession of Frank and Emma Washington, that not only Mary Ann Washington, but Frank and Hobert Alexander as well as everyone else in the family, knew of this arrangement and knew that the children of Alma Washington were entitled to their one-ninth interest and that all of the various corrective instruments, acts of renunciation and similar declarations were for the sole purpose of placing these parties back in the status which they would have had if the conveyances to Mary Ann Washington had never been executed.
“In our opinion the evidence adduced in this case is so clear and convincing that it leaves no room for speculation as to the nature of the various transactions discussed hereinabove. It is completely clear that at all times mentioned herein, Mary Ann Washington recognized that she did not own this interest and that her brother Alma Washington did own the same, and after his death, his heirs. Faithful to the trust placed in her, she tried by at least four separate instruments to return this interest to the heirs of Alma Washington after his death. Due to poor draftsmanship, the several instruments contained obvious errors in description and fractional interest. It is inconceivable that the defendants Frank Alexander and Hobert Alexander could have failed to recognize the extent and purpose of these instruments. They were reared in the home of Mary Ann Washington who was, in fact, their foster mother, their own mother having died during their early childhood. They had often talked with their Uncle Roosevelt Washington about it, and they themselves were affected in part by a similar transaction. As a matter of fact, the *647 action of Hobert Alexander as executor of Mary Ann Washington’s estate, causing his attorney to return certain checks mentioned hereinabove to Pan American Petroleum Corporation asking that they be reissued to the children of Alma Washington, places beyond the realm of speculation that they knew that the estate of Mary Ann Washington had no interest or claim in the property in question.”
* * * * * *
In refuting appellants’ contention that pa-rol evidence was inadmissible the district judge, referring to the authority of Louisiana Civil Code Article 2239, pointed out that the six defendants, represented by the curator, are forced heirs of Alma Washington and as such are entitled to use parol evidence and any other such evidence to annul the simulated contracts of their father, including the acts of conveyances, quitclaims, etc., wherein Alma Washington attempted to convey to Mary Ann Washington his interest in the estate of their parents as well as the instruments whereby Mary Ann Washington acquired, with succession money, for Alma Washington the interest previously sold at constable sale.
In the fairly early case of Schalaida v. Gonzales, 174 La. 907, 142 So. 123 (1932) it was established beyond question that forced heirs suing to set aside their ancestor’s simulated transfer of property to a coheir are not estopped to attack the transfer by failure to assert rights until all transferor’s indebtedness was prescribed. It was likewise settled that an action brought under Louisiana Civil Code Article 2239 to annul a simulated sale of property is not prescriptible.
 In Johnston v. Bearden (La.App. 2 Cir., 1961) 127 So.2d 319 (cert. denied) this court affirmed the position of the Supreme Court in the following language:
“Although an authentic act is full proof of the agreement contained in it, as between the contracting parties and their heirs and assigns, unless it be declared and proved a forgery (LSA-C.C. Art 2236) and parol evidence is not admissible against or beyond what is contained in such acts (LSA-C.C. Art. 2276), nevertheless forced heirs have the right to annul absolutely and by parol evidence, the simulated contracts of those from whom they inherit and, in this, they are not restricted to the legitime (LSA-C.C. Art. 2239). Moreover, sales of immovable property by parents to their children may be attacked by the forced heirs as containing donations in disguise if they can, prove no price was paid or that the price was below !4 of the real value of the property at the time of the sale. LSA-C.C. Art. 2444. Thus, under the authority of these codal provisions, parol evidence is admissible in an action by forced heirs to annul simulated contracts of those from whom they inherit; and, if such contracts are established as simulated, they are annulled in their entirety.” (Cases cited.)
Counsel for the Alexanders has argued on this appeal the prescription of four and ten years, contending that at most the heirs had a right to demand collation, which has been held to prescribe within ten years from the death of the donor. In view of the opinion of this court that certain purported acts of transfer of real estate were simulations and as such nullities, the pleas of prescription applicable to collation have no merit.
We consider next the question of the proper remuneration of the curator and the assignment of costs. The lower court found that in order to sift the facts set forth hereinabove from all the conflicting instruments, the curator was required to examine a voluminous abstract of title, to have discussions with many of the relations of the parties in interest, their friends, neighbors and attorneys. Additionally, the curator’s file reflected a mass of correspondence with the several parties that he *648 represented. George H. Robinson, a member of the bar of that court, examined the file of the curator and testified a fee of between $3,000 and $5,000 would be appropriate. The sum of $3,000 was awarded as a fee for the services performed. The lower court was in a better position to evaluate the curator’s services than are we and, finding no inequity in its award, it is affirmed.
By virtue of the authority vested m him by the provisions of Louisiana Code of Civil Procedure Article 4659 the trial judge awarded the successful claimants with judgment for costs against the adverse parties and we find no abuse of this discretion.
For the reasons assigned this court affirms, at appellants’ cost, the judgment of the lower court in all respects.