DOMENGEAUX, Judge.
In this succession proceeding, five of the decedent’s children, namely, Juanita Yerna, Willie Mae, Helen Lee, Velma Lurline, and Wilmer Ray filed a petition for collation, for an accounting, and a return of assets held in usufruct against their brother, Wilfred.[1] The petitioners allege that Wilfred received an advantage (as a forced heir) of his succession share through the sales of immovable property. The petitioners claim that the sales of some Acadia and Vermilion Parish tracts (and the surviving spouse usufruct on the Vermilion tract) by Mrs. Hoffpauir to Wilfred were, in fact, disguised donations inter vivos; additionally, petitioners claim that Wilfred also received an advantage from the interest-free credit sales made to him by his mother.
After a bench trial, the district court determined that the sales were made for a fair and valid price which did not constitute disguised donations; nor were the interest-free credit sales an advantage. Therefore, no collation was required of the property (or the value thereof), or of the interest on the credit sales.
Three of the plaintiffs in the original proceedings withdrew their claim after the trial court rendered judgment in favor of the defendant. However, two of the plaintiffs, Willie Mae and Helen Lee, have sus-pensively appealed the adverse judgment. The defendant brother answered the appeal seeking payment of deposition fees.
ISSUES
Appellants contend that the trial court erred in its findings. They argue: (a) that the price paid for the sale of the Vermilion Parish property and usufruct was so low as to require collation; (b) that the no-interest credit sale was an advantage; (c) that the price paid for the sale of the Acadia Parish property was so low as to require collation; and (d) that the no-interest credit sale for that purchase was an advantage.
FACTS
In December 1962, defendant Wilfred Wayne Hoffpauir and his father Rollie Hoffpauir purchased as co-owners a 160 acre tract of farmland in Acadia Parish for *933 $48,000.00 ($300.00 per acre). After Rollie Hoffpauir died in December 1963, Wilfred Hoffpauir wanted to purchase the tract of land to continue farming rice. On September 30, 1964, Allie Hoffpauir conveyed 40 acres, her Hi undivided interest in the Acadia Parish property, to her son, Wilfred, for $12,000.00, i.e., $300.00 per acre (the same price per acre that Rollie and Wilfred Hoff-pauir had paid). The deed was an authentic act properly recorded. The terms of the sale consisted of $1,000.00 cash paid and an $11,000.00 note payable in annual installments (with 2% interest to accrue from maturity). Mrs. Hoffpauir held a mortgage on that property. Wilfred Hoffpauir testified at trial that he paid his mother the remaining amount due the following year. He produced the cheek and the note marked “Paid,” both of which were admitted into evidence.
On January 10, 1967, Mrs. Allie Hoff-pauir sold her Hi undivided interest plus her surviving spouse usufruct over the other undivided ½ interest in certain tracts of land in Vermilion Parish to Wilfred for $37,509.15. This act of sale was properly confected and recorded. Wilfred paid his mother $2,509.15 down and executed a note for $35,000.00 (with 4% interest to accrue from maturity). The note was payable in twenty equal annual installments of $1,750.00, with the first installment due January 10, 1967. All payments have been timely made. Wilfred Hoffpauir testified at trial that he still owed some money on this last note, but had not paid it because both the property and loan were currently in dispute.
Two appraisers testified at trial as to the valuation of the land at the time the sales were made. Both appraisers’ reports were submitted into evidence. Richard Pease qualified as an expert real estate appraiser and broker on behalf of the plaintiffs. Mr. Pease, on direct examination, valued the Acadia farm property in question, i.e. 40 acres, which constituted Allie Hoffpauir’s half of the community property in full ownership at $350.00 per acre at the time of the sale. The total value amounted to $14,-346.50. On cross-examination, Mr. Pease admitted that the estimated value is actually a median value and that $300.00 per acre paid in 1964 was not a very low price.
Mr. Pease also rendered an opinion as to the value of the Vermilion farm property at the time of the sale in 1967.[2] He stated that the ⅜ undivided full ownership interest was worth $81,750.00 and that Mrs. Hoffpauir’s usufruct over the other ½ undivided naked ownership interest was valued at $34,649.57 (Mr. Pease relied upon Department of Revenue actuarial tables used for inheritance tax purposes); for a total value of $116,399.57 in 1967.
Mr. Pease also testified that he was unable to locate any comparable sales transacted for property in Vermilion Parish during 1967, so he inspected the property and used LSU Agri-Business publications; he also used local savings and loan estimates, and Federal Land Bank records to determine the price. However, defendant’s expert witness, Cecil Gremillion, who qualified as an expert real estate appraiser testified that the Vermilion farm acreage was worth between $190 and $200 per acre (for an average total value of $34,515.00). Mr. Gremillion was able to discover from the Vermilion Parish vendor-vendee indices two transactions within a year of the sale at issue involving similar farmlands; one which was adjacent to the Hoffpauir tracts and another which was in close proximity. Mr. Gremillion used these comparables, as well as interviews with local property owners, and an inspection of the farm, to formulate an estimate. Mr. Gremillion also testified that he took cognizance of the surviving spouse usufruct over the Vermilion Parish property but did not ascribe any value to it.
In written reasons for judgment, the trial court found that the plaintiffs failed to sustain their burden of proving that the *934 credit sales, and no-interest loans made incident thereto, constituted an advantage which required collation.
COLLATION AND VALUATION
La.C.C. Art. 2444 allows forced heirs to demand collation if the transfer of immovable property has been a disguised donation.
“The sales of immovable property made by parents to their children, may be attacked by the forced heirs, as containing a donation in disguise, if the latter can prove that no price has been paid, or that the price was below one-fourth of the real value of the immovable sold, at the time of the sale.”
La.C.C. Art. 2444; Roy v. Roy, 382 So.2d 253 (La.App. 3rd Cir.1980). The transfer could also be subject to collation if the price paid was greater than 'Ath (the standard provided in La.C.C. Art. 2444) but less than fair market value based upon the provisions of La.C.C. Art. 1248.
“The advantage which a father bestows upon his son, though in any other manner than by donation or legacy, is likewise subject to collation. Thus, when a father has sold a thing to his son at a very low price, or has paid for him the price of some purchase, for [or] has spent money to improve his son's estate, all that is subject to collation.”
La.C.C. Art. 1248.
In each instance, the forced heir alleging that an advantage or extra portion has been made must prove that it has violated the equality among forced heirs in order to require collation with the resulting real or supposed return to the mass of the succession. La.C.C. Arts. 1227 and 1229. Collation is required on the basis of the value at the time of the transfer. Johnston v. Bearden, 127 So.2d 319 (La.App. 2nd Cir.1961).
The trial judge concluded that Mrs. Hoffpauir sold land to Wilfred on credit bearing no interest. This was not a situation where there was a debt due by interest, then later remitted. Rizan v. Rizan, 139 La. 364, 71 So. 581 (1916). The trial court declined to find that an interest-free credit sale automatically becomes a disguised donation subject to collation. When the court finds that consideration exceeding one-fourth of the real property of the property at the time of sale was actually paid, it is unnecessary for the court to consider the claim for collation on the theory that the transfer was a donation in disguise. Cannon v. Cannon, 244 So.2d 64 (La.App. 1st Cir.1971).
Further, the trial judge found that plaintiffs’ own expert witness only confirmed that defendant paid fair market value for the Acadia Parish farm. Therefore, plaintiffs failed to establish that collation was required. As to the Vermilion Parish property, the trial judge found that Mr. Gremil-lion, expert appraiser on behalf of the defendant, offered a credible opinion as to the value of the Vermilion Parish property and on that basis found that the property was not under-valued in the credit sale. The trial judge further held that this finding is supported by the fact that defendant was buying an undivided interest. Therefore, since the price paid for each sale of immovable property was well within the fair market value as estimated by the court, plaintiffs’ suit was dismissed with court costs (including expert witness fees) assessed against them.[3]
The trial court is granted a great deal of discretion in determining the value of land; this discretion applies to any case involving the value of real estate. Successions of Mack, 413 So.2d 642 (La.App. 1st Cir.1982). We find no manifest error in the court’s handling of the property valuation.
*935 Plaintiffs claim that the price paid for the Vermilion tract included remuneration for the surviving spouse usufruct, thereby reducing the actual price paid for the immovable property.
Defendant urges that the valuation standard for a disguised donation cannot be applied in this instance because the value of the usufruct sold (which was subject to termination upon death or remarriage of the vendor-usufructuary) is too speculative and conjectural; and that a certain value of the interest sold cannot be ascertained.
The trial court, in considering the issue of the purchase of the usufruct, found that there was no active market for such a commodity; and consequently he concluded that the usufruct did not have a value which would necessitate collation.
Regardless of the trial judge’s finding on this issue, we conclude that the price paid by defendant was sufficient, irrespective of the value of the usufruct. See Parker v. Rhodes, 260 So.2d 706, 714-715 (La.App. 2nd Cir.1971), on rehearing, 260 So.2d 716, 718-719 (La.App. 2nd Cir.1972); A. Yianno-poulos, Personal Servitudes note 333, § 17 (La.Civ.L. Treatise Vol. 3, 2d ed. 1978).
We find that there was no disguised donation, based on an evaluation of the property from the evidence presented at trial. Therefore, we find that no collation is required.
Defendant thus paid more than tilth the market value of the land, i.e., approximately the exact fair market value, rendering the claim under La.C.C. Arts. 2444 and 1248 invalid.
DECREE
For the above and foregoing reasons, the judgment of the trial court is affirmed. All costs are assessed against appellants.
AFFIRMED.
GUIDRY, J., concurs and assigns reasons.

. Part of the conventional usufruct consisted of the use and enjoyment of movable property, both consumable and nonconsumable things, e.g., cash-on-hand, household furniture, and other personal property. La.C.C. Arts. 535, 536, 537.
La.C.C. Art. 538 provides:
"If the things subject to the usufruct are consumables, the usufructuary becomes owner of them. He may consume, alienate, or encumber them as he sees fit. At the termination of the usufruct he is bound to pay to the naked owner either the value that the things had at the commencement of the usufruct or deliver to him things of the same quantity and quality."
La.C.C. Art. 539 provides:
"If the things subject to the usufruct are nonconsumables, the usufructuary has the right to possess them and to derive the utility, profits, and advantages that they may produce, under the obligation of preserving their substance.
He is bound to use them as a prudent administrator and to deliver them to the naked owner at the termination of the usufruct.”
See La.C.C. Arts. 568 and 628.
The issue of usufructuary accounting is not on appeal because the parties entered into a stipulation at the commencement of trial which was incorporated into the judgment of the district court. The agreement established the value of the movable property ($27,626.54) in Mrs. Hoffpauir’s succession. The agreement also established that the distribution of the movable property would devolve accordingly: one-half of the determined amount is to be distributed to the forced heirs by the father’s intestate succession, not by the testament and heirship of the de cujus herein which named Wilfred Hoffpauir and his daughter as legatees.

. The sale of the Vermilion property contained several contiguous tracts of land totalling 177 acres.

. As to defendant’s request for deposition fees incurred during pretrial preparation (whether such depositions were introduced into evidence or not), we cannot determine the existence or nature of such alleged expenses from the record. Here we are affirming the judgment of the trial court which assessed all costs in this matter (including expert witness fees and any other court costs incidental to this action) against plaintiffs.