A. CASH *v.* J. DURAND.

FACTS.—Charge of fraud against defendant for obtaining the notes of plaintiff under false pretences
and misrepresentation.  *Held :* That there was no proof of defendant's fraud.

APPEAL from the Third District Court of the Parish of Jefferson, *Clarke,* J. *J. H. VanDalsen,* for plaintiff and appellant.  *Ogden & Leovy* and *Race & Foster,* for defendant.

VOORHIES, J.  The plaintiff alleges, that she was the owner of two promissory notes drawn by the defendant to the order of and endorsed by *John M. Durand,* dated the 24th of November, 1845, one for the sum of $2047 33⅓, payable five years after date, and the other for the sum of $1751 33⅓, payable nine years after date, and both secured by mortgage on certain property situated in the parish of Jefferson ; that she was induced to surrender said notes to the defendant, on his representation that it was for the purpose of erasing the mortgage and selling the property, so as to enable him from its proceeds to give immediate assistance to his uncle, *John M. Durand,* who was embarrassed in his money affairs, and to reinstate him in business, and thereby enable him to pay her, and for which he was to give her his joint obligation with his uncle ; that she surrendered said notes on or about the 17th of April, 1851, *and received two*

*joint notes from John Durand and John M. Durand,* amounting in the aggregate to $4300, as collateral security, that the former would fulfil his contract with the latter as soon as he should affect the sale of said property ; that in view of said agreement, on the 17th of June, 1851, *John Durand* conveyed to *Isaac A. Smith* by authentic act seven lots of ground and improvements thereon, &c., and on the 3d of July, 1851, the latter conveyed the same property to *James B. Durand,* a young brother of the defendant; that the said defendant has sold, or otherwise disposed of, the remainder of the property described in the act of sale from Mrs. *E. A. Durand* to him, and on which a mortgage ex· isted to secure the payment of said original notes ; that having made a simulated sale of said property, first, to *Isaac A. Smith* and from the latter to his young brother, the defendant now refuses either to give the promised aid to his uncle, in order to enable him to pay her, or to give her the same or equal securities to those which he fraudulently obtained from her by false representations and promises; that the defendant has been guilty of a gross fraud in obtaining from her her good and legal securities by means of false promises and misrepresentations : and that the two sales of the 17th of June, 1851, and of the 3d of July, 1851, from the defendant to *Isaac A. Smith* and from the latter to *James B. Durand,* are false and simulated, and made with a view to defraud her of her legal rights as a mortgage creditor. She therefore prays that the defendant be cited, and also arrested to answer the charge of fraud; that he be condemned to pay her the sum of $3798 66⅔, amount of said mortgage notes, with 8 per cent. per annum interest from maturity, that on the charge of fraud he be dealt with according to law, and that the sales from the defendant to *Isaac A. Smith* and from the latter to *James B. Durand* be declared fraudulent, simulated and void. The defendant was accordingly arrested and held to bail. An exception to the plaintiff's petition was filed by him and overruled. He then pleaded the general issue.

The case was submitted to a jury, who found a verdict in favor of the defendant, and from the judgment thereon rendered, the plaintiff appealed.

The record shows that on the 24th of November, 1845, the wife of *John M. Durand,* authorized by him, sold to the defendant certain lots of ground and buildings thereon, &c., situated in the parish of Jefferson. As the price, sundry promissory notes were given by the vendee, payable at different periods, and secured by the vendor's privilege and mortgage. The vendor deposited in the hands of the plaintiff two of these notes, the same described in her petition, to secure the payment of a loan of $3000 which he had obtained from her, and for which she held his interest notes. Thus it appears that *John M. Durand,* and not the defendant, was indebted to her, and that the notes in question were not held by her as owner, but as pledgee. But it may be asked, why were these notes taken out of the possession of the plaintiff and restored to the defendant ? The defendant, it appears, on the 14th of April, 1851, retroceded to his vendor five of the lots of ground and buildings thereon, &c., which he had purchased from her on the 24th of November, 1845, and the restoration of the notes in question constituted a part of the consideration of that retrocession. The plaintiff admits in her petition that she received the two joint notes of the defendant and his uncle, amounting in the aggregate to $4300 ; and it is neither alleged nor proved by her that the defendant bound himself to give her any other security for the restoration of his notes. It is true that mortgage notes of *Zebedee Doten,* in favor of *John M. Durand,* which turned out to be worth-

less, were given to the plaintiff as good security in lieu of those of the defendant. But by whom were they given? Not by the defendant, but by *John M. Durand* himself, the plaintiff's debtor.

If any fraud or deception was practiced upon the plaintiff in relation to the *Doten* notes, such fraud or deception must be imputed, in our opinion, to *John M. Durand*, who was the real party in interest. The obliquity of conduct on the part of *John M. Darand* in the transaction which has given rise to this suit, may, we think, be fairly deduced from his own testimony given in the cause, his various acts, and particularly his affidavit for the arrest of the defendant.

It is therefore ordered, adjudged and decreed, that the judgment of the District Court be affirmed with costs in both courts.

*VanDulsen*, on an application for a re-hearing:

The counsel for plaintiff and appellant respectfully submits the following as reasons why the Hon. Court should grant a re-hearing in these premises.

The Hon. Court sustains the counsel in his declarations that the "*Doten*" notes given to plaintiff were worthless and wholly non-effective, and that the two sales, the first from defendant to *Smith*, and the second from *Smith* to defendant's younger bother, were fraudulent; and also that plaintiff fully established her title to the original mortgage notes, at least as pledgee from *John M. Durand*, who was her original debtor, and the payee and endorser of those notes so pledged.

From this point, the interest of the plaintiff was overcome by the following (in effect) reasoning of the Hon. Court: Say the Hon. Court, "*John M. Durand* was her debtor, not the defendant, who owed her nothing. She also received the joint notes of defendant and *John M. Durand* as additional security." And lastly, "The plaintiff was only the pledgee of the original notes." And then, as judgment against plaintiff immediately follows, counsel is compelled to the only conclusion deduciable from the argument of the Court, to wit: That because the plaintiff was only the pledgee of the notes, the defendant was not guilty of fraud in obtaining possession of them by the base trickery and dissimulation he so successfully practiced upon the plaintiff. With profound deference for the expressed opinion of the Hon. Court, counsel will proceed to consider the three branches of the above set forth reasoning, and not without the fullest confidence of being able to convince the Hon. Court that the plaintiff's claims for a re-hearing, are based upon and sustained by the clearest principles of law.

1st. "*John M. Durand* was her debtor, not the defendant, who owed her nothing."

C. C., 3100. "*The pledge is a contract by which a debter gives something to his creditor for his debt.*" *John M. Durand* was our debtor and gave us the notes as a pledge to secure that debt.

C. C., 3103. "Every lawful obligation may be enforced by the auxiliary obligation of pledge."

*John M. Durand's* obligation to plaintiff was lawful, and she had a right to enforce it by the auxiliary obligation of a pledge.

C. C., 3109. "A debtor may give in pledge whatever belongs to him."

*John M. Durand* was the original payee and endorser of those notes, had them in his possession, and pledged them to plaintiff before their maturity, for a legal cause ; and negotiable money obligations so drawn, so endorsed, and so transferred to an unsuspecting third person, without notice of any fraud or want of consideration, carry with them every right known to the law, to enforce their payment for all the purposes and to the full extent of the transferee's property in them.   See all the jurisprudence of Louisiana on this subject, and every American and English writer on Bills and Notes.   See also, C. C., 3121, 3122, 3124.   See also *King* v. *Gayoso*, 8 N. S., 373.

It was not pretended that the defendant was entitled to receive notice of *John M. Durand's* pledge to plaintiff, of the obligations of defendant; but if it had been, or if this Hon. Court have any doubt on the point, Art. 3128, C. C., lays the question at rest, for that Article expressly declares that such notice is unnecessary. *King* v. *Gayoso.* 8 N. S., 373.

C. C., 3137. "If the debt, which has been given in pledge becomes due before it is redeemed by the person pawning it, the creditor, (pledgee,) by virtue of

the transfer, which has been made to him, shall be justified in receiving the amount, and in taking measures to recover it."

It is confidently believed, that after the above authorities shall have been examined, the Hon. Court will conclude that the first considered ground as a reason for judgment, is wholly untenable.

We now consider the second branch, to wit: "The plaintiff also received the joint notes of defendant and *John M. Durand* as additional security."

As additional security for what, did she receive them ? There is not one line in the record that shows the plaintiff to have received them in payment of the mortgage notes, nor was any such absurdity contended for by defendant's counsel, either in the District Court or in this Hon. Court. Then for what purpose were they given ? A legal mind can only conclude (in absence of positive proof) that they were handed to plaintiff as a pledge for the fulfilment of a double obligation of her debtor, the defendant : 1st, That acknowledging himself to be the debtor of plaintiff by reason of her possession of his obligations, he intended them as a pledge that he would not wrong her ; and 2d, Being well assured that the plaintiff was fully convinced she would never receive back the money she had loaned, except by means of the pledge she held legally, and on which chose pledged he (defendant) was the principal obligor ; the act of executing and giving to her, new notes, made and endorsed by himself and his uncle, was a solemn pledge that he would secure to her the debt due her, for the payment of which she held his mortgage paper. This is what we charged, what the plaintiff did necessarily believe and the defendant both promised and intended the plaintiff should believe. Any other conclusion would lead into a labyrinth of false logic. The money due to plaintiff was her little all. Before her was her debtor and pledgor, beside him was the debtor of the thing pledged, on which, by the clearest and strongest provisions of our Civil Code, she had a paramount privilege to the extent of, and for the restitution of her loan. And yet the Hon. Court said the defendant was not our debtor. Not to be our debtor, defendant must have paid our debt ; for he was our debtor while we remained the legal pledgee of those mortgage notes which he and his property were bound to us for.

C. C., 3137. From the laws cited, this position is too clear to be successfully assailed, which leaves us to examine, as to one fact, to wit : Did he pay us? There can be but one answer : he did not. Nor has it been pretended, nor is it so declared in the judgment of this Hon. Court. From the beginning one of defendant's counsel has contended that his client owed us nothing, never had owed us anything ; that although we were pledgees of notes which the law says we could collect from defendant, yet, says he, my uncle John should have surrendered them to me as per document D, page 55, of the record, and as uncle John has done him wrong, by not surrendering to him according to document D, a thing the poor plaintiff knew nothing about, and is in no manner bound by, he is justified in taking from us our securities by false pretences and misrepresentations. This logic is certainly not less startling than new. To sustain such a position, the maxims, that "all's fair in war," "stratagem is better than force," and "all's well that ends well," may be properly cited; but there is no maxim or principle of law or natural right to sustain it, notwithstanding this Hon. Court seems to have considered the argument favorably.

Another of defendant's counsel contended at bar that it is alleged, the defendant promised to sell the property on which the notes bore mortgage, if plaintiff would let him have the notes ; and that forasmuch as defendant did sell the property when he had obtained the notes, he had done all he had promised, and plaintiff had no cause to complain. Yes, he did sell the property, and as per the evidence in the record, he conveyed it into the pocket of his young brother to take it back at will. This position is certainly below legal criticism.

The third branch proposed to be considered, to wit : The plaintiff was only the pledgee of the notes, has been necessarily touched in the first part of this brief. All the laws shewing that the pledgee's right against the debtor of the thing pledged, is pure, clear and forcible, have already been cited. Much more could be said on this point if there ever had been an expressed opinion adverse to such a right in a pledgee ; but as all laws and authorities are clearly in favor of the right of a pledgee, as is sought to be enjoyed by this plaintiff, counsel will close this brief, by praying that the re-hearing may be granted.