180 So.2d 11 (1965)
W. A. WILLIAMS et al., Plaintiffs-Appellees,
v.
C. V. MORGAN et al., Defendants-Appellants,
The First National Bank in Mansfield, Defendant.
No. 10445.
Court of Appeal of Louisiana, Second Circuit.
October 28, 1965.
Rehearing Denied November 30, 1965.
*12 Love, Rigby & Donovan, Shreveport, for defendants-appellants.
John S. Pickett, Jr., Many, for plaintiffs-appellees.
Colvin & Hunter, Mansfield, for First Nat. Bank in Mansfield.
Before HARDY, GLADNEY and AYRES, JJ.
HARDY, Judge.
In this suit plaintiffs prayed for judgment declaring a forfeiture of the sum of $12,500.00 held by the First National Bank in Mansfield, Louisiana, as escrow agent under the terms of an agreement executed by the named plaintiffs and defendants. The Bank has no interest in the suit and, by stipulation of the parties, it was agreed that the bank was entitled to payment of $250.00, out of the amount held, in compensation for its services. After trial there was judgment in favor of plaintiffs, from which defendants have appealed.
By instrument dated November 1, 1963, plaintiffs, as owners of a six-eighths working interest in certain described leases, wells and equipment located in Sabine Parish, agreed to sell and defendants agreed to buy said interest. Under the terms of the escrow agreement plaintiffs were obligated to execute and deliver to the First National Bank in Mansfield valid assignments of the interest and to deliver abstracts and title papers covering the property to the attorneys for defendants, who were allowed until date of November 25th in which to approve or reject title. Defendants obligated themselves, in the event of acceptance and consummation of the agreement to purchase, to pay to plaintiffs a cash consideration of $350,000.00 and the amount of $12,500.00 was deposited with the escrow agreement as a credit against the purchase price. The agreement further provided that defendants should assume the operations of the leases during the escrow period under the stipulation that plaintiffs should pay all expenses for which they would be entitled to reimbursement in the event of consummation of the sale. Specifically, the right of operation of the leases by defendants was given in order that they might test the wells and take an inventory of the property. The escrow agreement contained the following *13 provisions which are material to a consideration of this case:
"2. That Party of the Second Part under the terms of this agreement places in escrow the sum of Twelve Thousand Five Hundred ($12,500) Dollars with the escrow agent holding this contract, being First National Bank in Mansfield, for good faith money for the carrying out of this contract and agreement. However, it being understood that within the time limits as hereinafter set forth Party of Second Part does not wish to go through with the contract for any reason it [at] all Party of Second Part shall forfeit the Twelve Thousand Five Hundred ($12,500) Dollars and they will be released in toto from this agreement."
* * * * * *
"18. While Party of First Part is to furnish the title information as requested, it is agreed that if on certain tracts the attorneys for Party of Second Part request additional abstract notes which have to be purchased, then Party of Second Part shall assume this expense, and it is understood between the parties that if Party of First Part places in the bank valid assignments of a valid 6/8ths working interest in the valid oil and gas leases, then they are entitled to the consummation of this deal, or entitled to the Twelve Thousand Five Hundred ($12,500) Dollars which is placed in escrow."
Plaintiffs complied with the obligations imposed upon them by the escrow agreement prior to date of November 25, 1963, but on said date defendants notified the escrow bank by telegram that they declined to comply with the agreement because of discrepancies found as the result of tests of wells and made demand for the return of the $12,500.00 cash deposit. On the same date plaintiffs made demand upon the bank for delivery of the cash deposit because of defendants' failure to carry out their agreement to purchase. This suit was filed December 3, 1963.
The defense is based upon charges of fraud and misrepresentation allegedly made by one of the plaintiffs, W. A. Williams, who acted for himself individually and for his co-owners as their duly authorized agent and attorney-in-fact in connection with the transaction. The defense is based upon the provision of R.C.C. Article 1847 defining fraud affecting a material part of a contract and influencing the party in making the agreement. Defendants also rely upon the principle of redhibition with respect to the avoidance of a sale on account of vices or defects in the thing sold which render it useless under the definition of R.C.C. Article 2520.
The issue presented by this appeal is whether defendants have proved their allegations of fraud and misrepresentation. There is no ground for disagreement as to the controlling legal principles and the determination of the issue therefore rests upon the facts established by the record.
It is contended on behalf of defendants that the plaintiff, Williams, was guilty of misrepresentations of material facts with respect to the properties involved to the effect that all wells on the leases, with the exception of one, were making the allowable production; that only one well had been acidized; that all wells were equipped with 5½ or 4½ inch casing; that only one well was making water, which well was a dual producer in which the source of water was the Annona Section, and, finally, that the amount of oil sold from the leases during the month of October was represented as being in excess of the actual amount of sales.
As opposed to the above alleged representations made by Williams, defendants assert that only one of the wells was making the allowable; that all the wells had been acidized; that one of the wells was not equipped with casing but with a 27/8ths string of tubing; that all of the wells, except one, were making water; that the *14 dual producer was showing water from the Saratoga Section and not from the Annona Section, which had been plugged.
The above allegations made by defendants in support of their reconventional demand were answered and denied in a supplemental pleading filed by plaintiffs.
On trial of the case the testimony on behalf of defendants was to the effect that at a meeting in the McNeely Cafe in Many, Louisiana, attended by Williams, several of the defendants, and a Mr. Heard, who appears to have acted as broker, Williams had made the specific representations relied upon by defendants, which were later determined to be false. It was further testified that the representations by Williams had been repeated at another meeting in Williams' office.
Williams' testimony on trial was a positive denial of the contentions of defendants, and he asserted that he had made no representations as to the actual production but had confined his statements to a personal opinion as to the potential production of the wells involved.
Fortunately, there was other testimony pertinent to the issue presented which does much to clarify the apparently irreconcilable conflict in the testimony of the opposed parties involved in this litigation.
A point which must be taken into consideration is that the defendants were experienced in oil operations, whereas Williams was entirely lacking in any background of training or experience in such matters. The record abounds in evidence of the precautions that were taken by defendants and the care which they exercised as protection against any probability of a bad investment. It was established that defendants had made an inspection of the leases and wells involved prior to the conversations with Williams, which occurred in the McNeely Cafe and at his home, and that one or more of the defendants had visited the Shreveport District Office of the Department of Conservation and had reviewed the records there on file with reference to the wells concerned. Additionally, the logs of the wells were made available by Williams. Upon the basis of the physical examination of the properties and the inspection of the records, any alleged mistakes, errors or misrepresentations on the part of Williams, if they actually existed, would have become apparent to the defendants as experienced operators. Upon physical examinations the equipment and the type and size of casing were apparent as would have been any abnormal production of water, since the flow of the wells was directed into open pits. All other details related to acidizing operations and daily production were available from the records of the Conservation Department. As to the allegation that the amount of oil sold from the leases during the month of October was misrepresented, we find that the evidence is woefully insufficient to support this claim. Counsel for defendants argue that Williams was obligated to disclose the fact that the purchaser of oil from the leases was not taking all of the production because of inadequate transportation and pipeline facilities. Again, it must be observed that this was a matter which could readily have been ascertained, and there is no indication that Williams intentionally concealed this information.
We regard the testimony of the petroleum engineer presented as a witness on behalf of defendants as being of particular importance. This witness examined the leases and testified that the amount of water produced from the wells was within the economic limit and it was his opinion that upon the basis of estimated production the operation of the wells would be profitable.
It is urged on behalf of defendants that certain conclusions should be drawn from the failure of plaintiffs to call the broker, Mr. Heard, as a witness. We think this question was properly and adequately covered in the opinion of the district judge, who observed that, when the case was originally fixed for trial, Heard had been summoned *15 to appear as a witness for defendant but was not called on trial of the case. The conclusive presumption is that Heard's presence as a witness was available to defendants, and it must be concluded that he would have been called if it was considered that his testimony would be material. Under the circumstances, we find no reason to draw the inference that plaintiffs' failure to present this witness should be construed against them.
We are entirely in accord with the legal principles enunciated by our Supreme Court in American Guaranty Co. v. Sunset Realty & Planting Co., 208 La. 772, 23 So.2d 409, which is strongly relied on by counsel for defendants. The elaborately detailed consideration of the elements of fraud and the proof thereof which were so comprehensively considered in the cited case are appropriate. Of particular application to the issue presented in this case is the following statement from the opinion of the court:
"The parties to contracts or deeds are not obliged by law to make any statement with reference to the title, the condition, or the value of the subject matter thereof. But, if any one of them undertakes to speak with reference thereto, he is legally obligated to tell the whole truth and neither conceal nor suppress any material facts or information bearing upon and affecting the title, the condition, and the value of the object of the transaction. In the event the speaker is guilty of material misrepresentation or concealment, the contract or deed is vitiated by his fraud, because he deceitfully obtained the consent of the other party to the transaction. An invitation by the offender to inspect or to investigate will not excuse him from his misconduct as it is not a defense of his wrongdoing to stand before the court and plead that the defrauded party unwisely or carelessly trusted him and placed too much confidence in his honesty and truthfulness. While a purchaser is under no obligation to inform a prospective vendor as to the value, the title or the condition of the property involved, he, individually, or as agent for his principal, having made representations and statements as to the value, the title or the condition of the property, knowing them to be false or reckless or without knowledge of their truth or falsity, is under the solemn obligation to make correct representations and tell the whole truth, without concealment or suppression of any material facts, especially if there exists an inequality of knowledge, as where the seller does not reside near the land and the purchaser does and is familiar with it." (Numerous authorities cited) (Emphasis supplied)
A wealth of jurisprudential authority supports the incontrovertibly established principles that charges of fraud are most serious; that fraud is never presumed and can be established only by exceptionally strong proof for which the burden must be borne by the one who makes the charge. Additionally, it is declared that neither the probability of fraud nor the suspicious nature of circumstances attending a transaction constitute adequate proof and that the fraud must be established by proof stronger than a mere preponderance of the evidence. These principles were carefully enunciated in Sanders v. Sanders, 222 La. 233, 62 So.2d 284, and were quoted in Garcia v. Dulcich, 237 La. 359, 111 So.2d 309.
After careful examination of the record, we think the defendants in this case have fallen far short of establishing the defense of fraud, even judged by the insufficient standard of a preponderance of the evidence. On the contrary, it is our conclusion that the defendants were not misled by any representations made by Williams, nor did they rely in any degree upon such representations as a basis for execution of the escrow agreement. To the contrary, the experienced defendants protected themselves against any possibility of an unwise or unprofitable investment, and well understood that the execution of the escrow *16 agreement which was their final protective device subjected them to the forfeiture of the amount deposited in the event of their failure, for any reason, to complete the transaction.
For the reasons assigned, the judgment appealed from is affirmed at appellant's cost.