**MIDLAND–GUARDIAN OF PENSA-COLA, INC.**

**v.**

**Mary H. CARR, wife of/and Earl T. Carr, Nu-Deal Trailer Sales, Inc., and Earl T. Carr Realty Co., Inc.**

Civ. A. No. 67–703.

United States District Court
E. D. Louisiana,
New Orleans Division.

Aug. 15, 1968.

Carl W. Cleveland, C. Ellis Henican, Jr., Henican, James & Cleveland, for plaintiff.

Ferdinand F. Willoz, III, for defendants.

MITCHELL, District Judge.

Midland-Guardian of Pensacola, Inc., sued Mary H. Carr, wife of/and Earl T. Carr, and Nu-Deal Trailer Sales, Inc., to recover a deficiency judgment on eleven promissory notes made by Earl T. Carr and Mary H. Carr and endorsed by Nu-Deal. The notes were secured by

separate collateral mortgages on each of eleven house trailers. This action also involves a claim by Midland-Guardian that a transfer of certain real estate made by Earl T. Carr to Earl T. Carr Realty Co., Inc., was made in fraud of the rights of Midland-Guardian or, alternatively, was a simulation, and Earl T. Carr Realty Co., Inc., was joined as a party defendant.

The Court, having heard the testimony of the witnesses and having considered the evidence and briefs, makes the following findings of fact and conclusions of law.

## FINDINGS OF FACT

### 1.

At all times material herein, Midland-Guardian of Pensacola, Inc., is a corporation organized under the laws of, and with its principal place of business in, the State of Florida.

### 2.

At all times material herein, defendants Earl T. Carr and his wife, Mary H. Carr, were persons of the full age of majority and domiciled in the Parish of Orleans, State of Louisiana.

### 3.

At all times material herein, defendants Nu-Deal Trailer Sales, Inc. and Earl T. Carr Realty Co., Inc., were corporations organized under the laws of the State of Louisiana, with their principal places of business in New Orleans.

### 4.

On November 8, 1965, Midland-Guardian made eleven separate loans to Earl T. and Mary H. Carr. The Carrs executed eleven promissory notes, the original amount totaling $63,869.58, each to be paid on a monthly installment basis. The notes were endorsed by Nu-Deal, a corporation wholly owned by the Carrs, and each was secured by a chattel mortgage on one of eleven house trailers. After having made one or, in a few cases, two payments on the eleven promissory notes, the Carrs and Nu-Deal defaulted on the payments and, on May 18, 1966, Midland-Guardian instituted executory proceedings in the Civil District Court for the Parish of Orleans. The eleven house trailers were seized and sold, with appraisement, by the Sheriff of St. Tammany Parish, Louisiana for the total price of $24,800.

### 5.

The Carrs contend that their signatures on the promissory notes were procured by fraud in that plaintiff represented that their signatures were necessary only to reflect that plaintiff retained the chattel mortgages on the trailers and plaintiff would in no event seek collection of the amount of the notes, except to the extent of foreclosing on the chattel mortgages.

The Court finds as a fact that the promissory notes sued upon were *bona fide* and that the signatures of Earl T. and Mary H. Carr thereon were not procured by fraud. Prior to the time the promissory notes were signed, Earl T. and Mary H. Carr had executed a continuing guaranty agreement pursuant to which they were personally liable for the sums included in the eleven promissory notes even before the notes were executed.

### 6.

The testimony revealed that defendant Earl T. Carr Realty Co., Inc. was organized in 1963. The original and present stockholders of the corporation are the three children of the Carrs, Mary Francis, (now 21 years of age) and Alice (now 20) owning 666 shares jointly and Earl, Jr. (now 15) owning 334 shares. The three directors of the corporation are Earl T. Carr, (President), Jerome Adams, (Vice President) and Mary H. Carr.

The defendant realty company was a dormant corporation until May 16, 1966 when the property in question was transferred to the corporation by Earl T. Carr. The corporation owns no other property or assets.[1]

1. Testimony of defendant, Mrs. Mary H. Carr.

### 7.

On May 16, 1966, Earl T. Carr executed a purported Act of Sale to Earl T. Carr Realty Co., Inc., a corporation of which he was president and managing officer, of the following described real estate owned by him:

A CERTAIN LOT OF GROUND, in the Third District of New Orleans, Square 897, bounded by Esplanade Avenue, North Roman, North Prieur and Kerlerec Streets, designated as Lot "E" on a survey by Gilbert & Kelly, Surveyors, dated August 12, 1926, said Lot "E" commences at a distance of 98' 11" 3' "from the corner of Esplanade Avenue and North Roman Street and measures thence 78' 2" 5' " front on Esplanade Avenue, by a depth of 157' 4" b.e.p.l.

The improvements bear Municipal No. 1819 Esplanade Avenue and the sale is recorded in C.O.B. 670, Folio 524.

### 8.

According to the Act of Sale, the consideration for the transfer was $85,000, which consisted of the assumption of a pre-existing $55,000 first mortgage, with the balance represented by a thirty (30) year installment note, bearing interest at six (6%) per cent per annum, drawn by Earl T. Carr Realty Co., Inc. to the order of bearer, secured by a second mortgage on the property. Earl T. Carr Realty Co., Inc., made no payments on the promissory note in 1966, and Earl T. Carr was unable to demonstrate that any other payments had been made, with the exception of one check in the amount of an installment due on the second mortgage note which was paid to him during 1967 by Earl T. Carr Realty Co., Inc.

### 9.

The Court finds as a fact that at the time of the transfer of the property by Earl T. Carr to Earl T. Carr Realty Co., Inc., Earl T. Carr was insolvent and had previously defaulted on substantial loans to his creditors including loans of $26,-618.64 and $1,499.04 owed to The National American Bank of New Orleans; loans of $54,140.41, $4,000 and $6,000 owed to The National Bank of Commerce in New Orleans; and a loan of $80,476 owed to the Business Loan and Investment Corporation. Additionally, on May 16, 1966, the date of the alleged transfer, Earl T. Carr had knowledge of his failure to pay 1963 federal income taxes in the amount of $29,595.06, which ultimately resulted in a federal tax lien being filed against Earl T. and Mary H. Carr on October 10, 1966. In addition to being made when Earl T. Carr was insolvent, the transfer of real estate on May 16, 1966, was made under highly suspicious circumstances.

### 10.

After the transfer of the real estate from Earl T. Carr to Earl T. Carr Realty Co., Inc., the situation of all parties involved in the transaction remained completely unchanged, and the management and control of the property remained in the hands of Earl T. Carr, assisted by his mother, Zoe Turner, Carr, who resided on the premises. No mortgage, conveyance, or tax researches were obtained by Earl T. Carr prior to the transfer, and the recited consideration for the transfer was $25,000, less than the valuation placed upon the property by Earl T. Carr in verified financial statements supplied to Midland-Guardian at the time the loans at issue herein were made. The transferee corporation, Earl T. Carr Realty Co., Inc., was wholly owned and/or controlled by Earl T. Carr, who was and is its president. Thus, Earl T. Carr Realty Co., Inc., had knowledge of the insolvency of Earl T. Carr at the time of the transfer.

### 11.

The Court finds as a fact that the transfer of the afore described property by Earl T. Carr to Earl T. Carr Realty Co., Inc., was a simulation made in fraud of the rights of creditors, and was designed to conceal from them the equity in a valuable real asset.

**12.**

Midland-Guardian, as stipulated by all parties in the pre-trial order, complied with the laws of Louisiana in the executory proceedings instituted by it to seize and sell the collateral securing the promissory notes sued upon herein, and has preserved its right to a deficiency judgment for the difference between the face amount of the promissory notes, less certain stipulated credits.[2]

## CONCLUSIONS OF LAW

**1.**

The Court has jurisdiction of this action based upon diversity and an amount in controversy in excess of $10,000 exclusive of interest, costs and attorneys' fees, and venue is properly laid in the Eastern District of Louisiana, New Orleans Division.[3]

**2.**

Midland-Guardian of Pensacola, Inc. is entitled to a deficiency judgment in the amount of Thirty One Thousand Three Hundred Eighty Five and 61/100 ($31,-385.61) dollars, plus interest and costs, against Mary H. Carr, wife of/and Earl T. Carr and Nu-Deal Trailer Sales, Inc., jointly, severally and in solido.[4]

**3.**

■■ One who alleges fraud has the burden of establishing it by legal and convincing evidence, and fraud is never presumed. The Court concludes that defendants have failed to prove that their signatures on the notes in question were procured by fraud.[5]

**4.**

■ Fraud and simulation may be established by circumstantial evidence.[6]

**5.**

■■ The transfer of property to a family corporation in the face of existing debts and pending suits, the inadequacy or fictitiousness of the purchase price, the insolvency of the debtor, the sale to close relatives of the vendor, an active interest in the affairs of the vendee manifested by the vendor after the sale, or the small means of the purchaser relative to the value of the thing purchased, are badges of fraud and several badges of fraud make a strong case of simulation. A party asserting a revocatory action or an action to declare a simulation can shift the burden of proof to the transferor who must prove that the transfer was *bona fide* if the party attacking the transfer shows that the transfer was made under suspicious circumstances, or that it was made when the transferor was insolvent. If the transferor then fails to meet the burden of proving that the transfer was *bona fide,* it must be presumed to have been made in fraud of the rights of the transferor's creditors.[7]

**6.**

■ The Court concludes that the transfer of the property bearing the

---

2. See Annex 1.

3. 28 U.S.C. § 1332.

4. La.C.C. Art. 2771; La.R.S. 13:4101–4111.

5. Globe Const. Co. v. Huhner, 3 La.App. 259 (1925); Cash v. Durand, 9 La.Ann. 190 (1854); Williams v. Morgan, 180 So. 2d 11 (La.App.–1965); Kaufman v. Arnaudville Co., 186 So.2d 337 (La.App.–1966).

6. Johnston v. Bearden, 127 So.2d 319 (La. App.–1961).

7. Gayle v. Jones, 74 F.Supp. 262 (W.D. La.–1947); Am. National Bank v. Viterbo, 46 La.Ann. 1313, 16 So. 199 (La.S. Ct.–1894); Agricultural Supply Co. v. Lavigne, 179 La. 1030, 155 So. 764 (1934); Friedlander v. Brooks, 35 La. Ann. 741 (La.S.Ct.–1883); Pruyn v. Young, 51 La.Ann. 320, 25 So. 125 (La. S.Ct.–1889); Laborde v. Dauzat, 158 So.2d 637 (La.App.–1964); writs ref., 245 La. 731, 160 So.2d 595; Joyner v. Batchelor, 206 So.2d 744 (La.App.–1968).

Municipal number 1819 Esplanade Avenue, New Orleans, Louisiana by Earl T. Carr to Earl T. Carr Realty Co., Inc. was a simulation, made in fraud of creditors.

### 7.

Let judgment be entered in favor of plaintiff, Midland-Guardian of Pensacola, Inc. and against defendants Mary H. Carr, wife of/and Earl T. Carr, and Nu-Deal Trailer Sales, Inc., jointly, severally and in solido, in the sum of Thirty One Thousand Three Hundred Eighty Five and 31/100 ($31,385.31) dollars, with interest at rate of 5% per annum from date of judicial demand, plus costs of these proceedings and attorneys' fees in the amount of 25%.[8]

### 8.

Let judgment be entered in favor of plaintiff Midland-Guardian of Pensacola, Inc. and against defendant, Earl T. Carr Realty Co., Inc., decreeing that the sale of the property (bearing Municipal No. 1819 Esplanade Avenue, New Orleans Louisiana) by Earl T. Carr to Earl T. Carr Realty Co., Inc., dated May 16, 1966, recorded in the Conveyance Records for the Parish of Orleans in COB 670, Folio 524, be and it is hereby declared null and of no effect and the property is subject to the just claims of the debtor's creditors.

### 9.

Let judgment be entered ordering the Recorder of Mortgages for the Parish of Orleans, State of Louisiana, to cancel and erase from his records the inscription of the mortgage granted by Earl T. Carr Realty Co., Inc. in favor of Earl T. Carr, covering the property bearing Municipal No. 1819 Esplanade Avenue, New Orleans, Louisiana, recorded in MOB 2090, Folio 518.

8. The Court finds that, while apparently legal, the contract figure of 25% attorneys' fees, as stipulated in the note, is totally unconscionable. The Court deplores its lack of power to reduce the rate.

ANNEX 1

| Ex. No. | Original Note | Payments | Total Discount | Ins. Refund | Proceeds of Sale | Earned Discount | Total Due |
|---|---|---|---|---|---|---|---|
| P-1 | $6,878.04 | $361.72 | $1,686.50 | $447.53 | $2,885.00 | $137.62 | $1,634.91 |
| P-2 | $5,060.40 | $134.34 | $1,012.03 | $293.66 | $1,700.00 | $106.96 | $2,027.33 |
| P-3 | $5,370.48 | $134.59 | $1,239.30 | $334.44 | $1,700.00 | $108.87 | $2,071.02 |
| P-4 | $7,649.88 | $252.14 | $1,981.98 | $520.95 | $2,940.00 | $148.98 | $2,103.79 |
| P-5 | $5,815.44 | $221.54 | $841.88 | $397.48 | $2,000.00 | $74.49 | $2,429.03 |
| P-6 | $4,191.36 | $214.64 | $698.78 | $200.93 | $1,900.00 | $91.68 | $1,268.69 |
| P-7 | $5,239.20 | $224.64 | $1,047.30 | $291.04 | $2,000.00 | $110.78 | $1,787.00 |
| P-8 | $4,972.20 | $215.74 | $993.40 | $275.72 | $1,820.00 | $105.05 | $1,772.39 |
| P-9 | $6,839.82 | $240.38 | $1,677.24 | $447.53 | $3,170.00 | $137.52 | $1,445.04 |
| P-10 | $4,791.42 | $222.46 | $879.53 | $250.88 | $1,900.00 | $103.14 | $1,641.69 |
| P-11 | $7,061.34 | $246.06 | $1,731.76 | $457.26 | $2,800.00 | $141.34 | $1,967.60 |