**UNITED STATES of America, Plaintiff,**

v.

**Kelly M. McCOMBS, Nancy Ellison, and Mary McCombs, Defendants.**

No. 87–CV–1475L.

United States District Court,
W.D. New York.

June 13, 1995.

Anne VanGraafeiland, Asst. U.S. Atty., Rochester, NY, Andrew D. Plepler, Trial Attorney, Tax Division, U.S. Department of Justice, Washington, DC, Peter Sklarew, U.S. Department of Justice, Tax Division, Washington, DC, for the United States.

Christopher S. Ciaccio, Rochester, NY, Arnold R. Petralia, Petralia, Webb & O'Connell, P.C., Rochester, NY, for Kelly M. McCombs.

Michael J. Mazzullo, Rochester, NY, Arnold R. Petralia, Petralia, Webb & O'Connell, Rochester, NY, for Robert J. McCombs.

Arnold R. Petralia, Petralia, Webb & O'Connell, Rochester, NY, for Nancy McCombs Ellison, John Ellison, Federal Savings Columbia Banking.

Christopher S. Ciaccio, Rochester, NY, Michael J. Mazzullo, Rochester, NY, Arnold R. Petralia, Petralia, Webb & O'Connell, Rochester, NY, for Mary McCombs.

Peter A. Sparagna, Office of the New York State Attorney General, Department of Law, Albany, NY, Arnold R. Petralia, Petralia, Webb & O'Connell, Rochester, NY, for the State of New York.

## DECISION AND ORDER

FISHER, United States Magistrate Judge.

This matter is before the court on remand from the Second Circuit Court of Appeals, *United States v. McCombs,* 30 F.3d 310 (2d Cir.1994), to consider the validity and priority of two federal tax liens as against transferees of the taxpayer's property. The two main issues to be resolved on remand involve the two federal tax liens against defendant Nancy McCombs–Ellison's former property at 74 Meadow Creek Lane, Monroe County, New York.

## ISSUES

1. *1982 tax lien*—Whether the government's 1982 tax lien on Nancy McCombs–Ellison's property is invalid against defendants Kelly McCombs and Mary McCombs (Nancy's daughters), subsequent transferees of the property, as "purchasers" under 26 U.S.C. § 6323(a), where the consideration in the form of an assumption of the outstanding balance of two mortgages worth $57,797.94 was given for property worth $85,657; and,

2. *1984 tax lien*—Whether the government can validate its 1984 tax lien on Nancy McCombs–Ellison's former property by avoiding the 1982 transfer of the property to her daughters as a fraudulent conveyance under New York Debtor and Creditor Law §§ 273 and 276.

## INTRODUCTION

In a complaint filed November 24, 1987, the government sought a declaration of the validity of federal tax liens it had filed against the property of defendant Nancy McCombs–Ellison (Nancy), and an avoidance of the transfer of her property to her daughters, defendant Kelly McCombs (Kelly) and defendant Mary McCombs (Mary). It also sought foreclosure on these liens, and sale of the property to satisfy the liens. The matter was tried before the undersigned on March 19, 1992, pursuant to 28 U.S.C. § 636(c) upon consent of the parties and by order of District Court Judge David G. Larimer, date February 28, 1992. This court issued a judgment finding that Nancy was liable for unpaid withholding taxes, and that the federal tax liens on Nancy's former property were prior to the interests of defendants Kelly, Mary, and defendant Robert McCombs (Robert), a mortgagee of Kelly's and Mary's interest in the property. This court also ordered a foreclosure sale of Nancy's former property to satisfy the tax liens. *United States v. McCombs–Ellison,* 826 F.Supp. 1479 (W.D.N.Y.1993).

Defendants appealed. The Court of Appeals affirmed that part of the judgment imposing taxpayer liability on Nancy and the validity of the 1982 tax lien thereunder; va-

cated the judgment setting aside the conveyance of property from Nancy to Kelly and Mary as fraudulent under New York Debtor and Creditor Law §§ 273 and 276 and the foreclosing of the 1982 and 1984 tax liens, and remanded for further proceedings; and reversed the judgment determining that the federal tax liens were prior to Robert's mortgage interest on the property. Following this ruling, the government petitioned the Court of Appeals for a rehearing. This petition was denied by the Court of Appeals by order dated October 3, 1994. *See United States v. McCombs*, 30 F.3d 310 (2d Cir. 1994).

## BACKGROUND

### I. *Findings of Fact*

The following findings of fact are applicable to this disposition on remand. These are findings of fact the court made at trial in accordance with Fed.R.Civ.P. 52(a), and as corrected by the Second Circuit Court of Appeals.

In 1962, Robert and Nancy purchased property at 74 Meadow Creek Lane (Property) in Monroe County, New York. Nancy and Robert, who were legally married at the time, financed the purchase of the Property by giving a $30,000 mortgage to Columbia Banking, Saving and Loan Association (Columbia Bank). The couple divorced and Robert conveyed his interest in the property to Nancy by quit claim deed in 1978.

In 1979, Nancy entered into a restaurant business venture with Jon Ellison (Ellison). They formed two business entities, Spinnaker Pole Corporation (Spinnaker Pole), and another entitled The Port and Starboard (P & S). Nancy and Ellison purchased a restaurant, through P & S, on May 14, 1979 and leased it to Spinnaker Pole which ran the restaurant. P & S made a cash down payment and gave a purchase money mortgage to the sellers of the restaurant. Nancy helped finance this purchase with $50,000 she obtained by giving a second mortgage on the

Property to Marine Midland Bank (Marine Midland).

In 1981, the sellers of the restaurant foreclosed on the mortgage from P & S. Shortly thereafter, Nancy and Ellison's two business entities filed for bankruptcy. Furthermore, Spinnaker Pole had failed to pay withholding and unemployment taxes for restaurant employees. This resulted in an assessment of tax liability by the Internal Revenue Service (IRS). On June 14, 1982, the IRS assessed liability of $26,925.79 (1982 tax lien) against Nancy and Ellison for unpaid taxes.[1]

On September 15, 1982, Nancy conveyed the Property at 74 Meadow Creek Lane to her daughters, Kelly and Mary, by warranty deed. The deed was recorded in the Monroe County Clerk's Office on September 16, 1982. As consideration for the conveyance, Kelly and Mary assumed the outstanding principal on both the Columbia Banking and Marine Midland mortgages in the amount of $10,469.29, and $47,328.65, respectively. No other consideration was recited in the deed.[2] This conveyance took place eight days after an IRS agent allegedly left a "calling card" at Nancy's house. On September 22, 1982, a notice of federal tax lien on the Property for the 1982 assessment was filed in the Monroe County Clerk's Office.

On April 16, 1984, the IRS issued another assessment of tax liability against Nancy and Ellison in the amount of $3,091.28 (1984 tax lien). This assessment was for other unpaid withholding taxes incurred by Spinnaker Pole. On June 21, 1984, the government filed notice of its tax lien on the Property in the Monroe County Clerk's Office.

In November, 1984, Kelly and Mary borrowed $53,000 from their father Robert, and gave him a mortgage on the Property for that amount in return. This money was used to pay off the Marine Midland mortgage on the Property. The mortgage was recorded in the Monroe County Clerk's Office on January 24, 1985. As of July 10, 1985, Kelly and

---

1. A tax lien is deemed to arise on the property of a taxpayer at the time of assessment. 26 U.S.C. §§ 6321, 6322.

2. The Court of Appeals corrected a finding of fact that the court had made at trial, that Kelly and Mary had taken the property "subject to" the Marine Midland Bank mortgage. *United States v. McCombs*, 30 F.3d at 327.

Mary had paid down the outstanding balance on the Columbia Bank mortgage by $6,000.

## II. *Procedural Posture*

The government filed its complaint on November 24, 1987 against Nancy, Ellison, Kelly, Mary, Robert and Columbia Bank.[3] It sought the following relief:

(1) Declare the federal tax liens assessed against all property and rights to property of defendant Nancy McCombs–Ellison valid;

(2) Enter judgment for the plaintiff against Nancy McCombs–Ellison in the amount of $30,035.07 plus interest from the date of assessment;

(3) Set aside a transfer to defendants Kelly and Mary McCombs of property located at 74 Meadow Creek Lane, Rochester, New York, as fraudulent;

(4) Order that the federal tax liens on the property, located at 74 Meadow Creek Lane, Rochester, New York, be foreclosed and the property sold free and clear of titles, liens, claims or interests of any defendants.

In support of its claims, the government argued, *inter alia,* that its two tax liens on the Property were valid and prior to the interests of Kelly and Mary. With respect to its 1982 tax lien it maintained that although Kelly and Mary received transfer of the property from Nancy and recorded the deed before the government recorded its tax lien on the property, the government had a priority interest in the property because the tax lien attached to the property before the conveyance to Kelly and Mary took place, and Kelly and Mary were not "purchasers" under 26 U.S.C. section 6323(a). *See, United States v. McCombs,* 30 F.3d at 321–22. In its argument to enforce the 1984 tax lien, the government sought to set aside the entire 1982 conveyance from Nancy to her daughters as fraudulent under New York law. Nancy did not own the Property at the time of the 1984 tax assessment. With the conveyance set aside, the Property would have still belonged to Nancy at the time of the 1984 assessment, and the federal tax lien could have attached to it. *Id.* 30 F.3d at 322.

A bench trial on this matter was conducted on March 19, 1992. As evidence at trial, the government submitted 23 documents. The defendants stipulated that 22 of these exhibits should be entered, and reserved the right to impeach them during cross-examination of government witnesses. Unexpectedly, the government rested its case without calling any witnesses. Thus, defendants were not able to exercise their strategy of impeaching the evidence.

After the government rested its case, the defendants moved for "summary judgment," and in the alternative, moved to dismiss the complaint on the basis that the government did not establish its claims of Nancy's tax liability or fraudulent conveyance. The court reserved decision.

Defendants' case entailed only calling Nancy as a witness. She testified as to the issues of her tax liability for unpaid withholding and unemployment taxes. (This is an important point because the defendants have the burden of proof on the federal issue of whether Kelly and Mary are "purchasers"). The defendants then rested their case, and renewed the motions for "summary judgment" and to dismiss the complaint. Decision was again reserved by the court.

After the trial, the parties filed post-trial briefs and had oral argument on the issues raised. The court issued a verdict and opinion finding, *inter alia,* that Nancy was liable for unpaid taxes in the amount claimed by the government; that the conveyance of the Property from Nancy to Kelly and Mary was fraudulent under New York law; that the government's tax liens on the Property were valid and prior to the interests of Kelly, Mary, and Robert. The court also ordered a foreclosure sale of the property.[4]

The defendants appealed. The Second Circuit Court of Appeals affirmed the finding of Nancy's tax liability; reversed the finding

---

3. The matter has since been discontinued against Ellison and Columbia Bank. *See, United States v. McCombs–Ellison,* 826 F.Supp. 1479, 1483 n. 1 (W.D.N.Y.1993).

4. The foreclosure sale was stayed pending the appeal of the judgment.

that the government's tax liens were prior to Robert's mortgage interest in the Property; and vacated and remanded the finding of a fraudulent conveyance of the Property from Nancy to her daughters. It also vacated the finding that Kelly and Mary were not "purchasers" under 26 U.S.C. § 6323(a), because the court did not make this determination based on federal law. Specifically, the Court of Appeals directed this court to separately consider the government's theories for enforcing each of the tax liens. *See, United States v. McCombs,* 30 F.3d at 321–22.

The government petitioned the Second Circuit Court of Appeals for rehearing and sought the following relief:

(1) That the District Court, on remand, should determine whether the consideration paid by Kelly and Mary for the property was fair consideration in relation to the property's fair market value;

(2) that the parties should be allowed, on remand, to present further evidence to establish that fair market value of the property at the time of the transfer;

(3) that the District Court, on remand, be allowed to consider whether the value of Kelly and Mary's assumption of the existing mortgages as consideration for transfer of the property should be less than the face value of the mortgages; and

(4) that the District Court be free on remand to consider the fraudulent conveyance theory with respect to both the 1982 and 1984 assessments.

Appellee's Petition for Rehearing, dated August 25, 1994, at 12. The Second Circuit denied this petition without opinion, by order dated October 3, 1994.

Therefore, established in this case for remand are the findings that Nancy is personally liable for the unpaid withholding and unemployment taxes and that the 1982 tax lien validly attached to the property. Further established is that Robert's mortgage interest on the Property has priority over both of the government's tax liens. This leaves the court on remand to determine the validity and priority of the 1982 and 1984 tax liens as against Kelly and Mary.

## DISCUSSION

### A. *1982 Tax Lien*

The first issue to be addressed on remand has to do with the priority of the 1982 tax lien. The Second Circuit has already determined that a valid tax lien attached to Nancy's Property for her unpaid tax liability on the 1982 assessment. *United States v. McCombs,* 30 F.3d at 321–22. It left for this court to resolve the relative priority of this lien and in doing so, "determine *only* whether or not Kelly and Mary are 'purchasers' under [26 U.S.C.] § 6323(a)." *Id.,* 30 F.3d at 329.[5]

Section 6323(a) gives protection to certain third parties who have an interest in a taxpayer's property from federal tax liens. It provides, in relevant part, that a federal tax lien "shall not be valid as against any *purchaser* . . . until notice thereof . . . has been filed . . ." (26 U.S.C. § 6323[a] [emphasis supplied]). In this case on remand, "[w]here, . . . appellants [Kelly and Mary] recorded the conveyance before the government recorded its tax liens, a finding that appellants are protected persons under section 6323(a) would render their interests in the Property prior to that of the tax liens." *United States v. McCombs,* 30 F.3d at 321.

### (a) *Burden of Proof*

■ A sub-issue to be addressed with discussion of the 1982 tax lien is which party has the burden of proof. The Second Circuit gave *no indication in its direction for remand* as to which party has the burden of proof on the issue of whether Kelly and Mary are "purchasers" under section 6323(a). Furthermore, burden of proof was not addressed with regard to the "purchasers" issue in the

5. Although the government claims that this court may consider its argument of fraudulent conveyance with respect to the 1982 tax lien, this is contrary to the Second Circuit's direction for remand. The Second Circuit clearly stated that only the section 6323(a) argument may be considered in the disposition of the 1982 tax lien because that was the theory under which the government proceeded at trial. *United States v. McCombs,* 30 F.3d at 329.

verdict and opinion after trial.[6] Case law interpreting section 6323 indicates that the burden of proof should be placed on Kelly and Mary.

The government argues that the defendants have the burden of proof by virtue of the statutory framework of section 6323(a). The government has a lien on the Property by virtue of its tax assessment against Nancy. 26 U.S.C. § 6321. This lien, however, is not valid against a "purchaser" until notice is filed. 26 U.S.C. § 6323(a). It has been held that a third party seeking to invalidate a federal tax lien in an interpleader action bears the burden of proving that she is entitled to the protection of section 6323 as to her interest in a tax debtor's property. *Resolution Trust Corporation v. Gill,* 960 F.2d 336, 344 (3d Cir.1992) (alleged holder in due course of checks drawn on taxpayer's bank accounts had burden of proving that she was a purchaser and came within the shelter provision making a federal tax lien invalid as against her interest under 26 U.S.C. § 6323[b][1][A] in an interpleader action); *Texas Oil & Gas Corporation v. United States,* 466 F.2d 1040, 1054 (5th Cir.1972), *cert. denied* 410 U.S. 929, 93 S.Ct. 1367, 35 L.Ed.2d 591 (1973); *Rodeck v. United States,* 697 F.Supp. 1508, 1511 (D.Minn.1988) (claimant in interpleader action bore the burden of proving that she was a "purchaser" and entitled to protection of section 6323[a] ); *STV Engineers, Inc. v. Ash,* 1986 WL 3862, 57 A.F.T.R.2d 86–1137, 86–1141, 86–1 U.S.T.C. ¶ 9352 (E.D.Pa.1986) (claimant transferee of taxpayer's interest in annuity had burden to prove in interpleader action that he was a "purchaser" and gave "adequate and full consideration" to gain priority over government claimant's federal tax lien); *aff'd,* 806 F.2d 251, 254 (3d Cir1986); *see also, MacKenzie v. United States,* 109 F.2d 540, 542 (9th Cir. 1940) (legislative history of section 6323, as interpreted through a predecessor statute, reveals that burden of proof is on party seeking protection of the statute); *but see, United States v. McCombs,* 30 F.3d at 333 (". . . to deprive a person of protection under section 6323[a], a federal statute, the burden and risk of persuading the fact finder that

Robert had actual knowledge of a fraudulent conveyance rested with the government"). Although Kelly and Mary are not claimants in an interpleader action, but rather defendants in the government's action pursuant to 26 U.S.C. § 7403, they are nonetheless seeking the protection of § 6323.

Defendants argue that the government has the burden of proof to show that Kelly and Mary are not "purchasers" under section 6323(a) because they affirmatively alleged this point in their complaint. Additionally, since the Second Circuit allocated the burden of proof to the government on the fraudulent conveyance issue with respect to the 1984 tax lien, defendants claim that this allocation should be followed for decision on the "purchasers" issue. Alternatively, defendants contend that they merely have the burden of production on the "purchasers" issue, to show that they gave consideration for the transfer of the Property, and that the government has the burden of going forward to show that the consideration was inadequate. This argument is not persuasive. The fact is that Kelly and Mary are seeking protection from an already valid tax lien on the property. Therefore, defendants have the burden of proof to show that they are entitled to protection as "purchasers."

### (b) *Adequate and Full Consideration*

■ In order to determine whether Kelly and Mary are "purchasers" under section 6323(a), the court must determine whether Nancy's conveyance of the Property to Kelly and Mary in exchange for their assumption of the mortgages on the Property constituted a purchase, "for adequate and full consideration in money or money's worth," 26 U.S.C. § 6323(h)(6). The term "money or money's worth" encompasses "money, a security . . . , tangible or intangible property, services and other consideration reducible to a money value." 26 C.F.R. § 301.6323(h)–1(a)(3). To qualify as "adequate and full consideration," the consideration given for a transaction must bear "a reasonable relationship to the true value of the interest in the property

---

**6.** The burden of proof issue was previously decided only under the New York law of fraudulent conveyance, and found by the Second Circuit to be incorrectly allocated to the defendants.

acquired." 26 C.F.R. § 301.6323(h)–1(f)(3). Courts have required that the consideration and property value in this equation be relatively close. *See, United States v. Carson*, 741 F.Supp. 92, 95 (E.D.Pa.1990) (taxpayer's daughter did not qualify as a "purchaser" where the $1.00 she gave as consideration for the repurchase of three properties from the taxpayer was not "adequate and full consideration"); *STV Engineers, Inc. v. Ash*, 1986 WL 3862, 57 A.F.T.R.2d at 86–1141, 86–1 U.S.T.C. ¶ 9352 (*dictum* ) (purchase of annuity by transferee from taxpayer was not for "adequate and full consideration" as a matter of law where under transferee's calculation of annuities' value, value of annuity acquired was 25% more than the value of the consideration given); *United States v. Mac Cement Finishing Corporation*, 546 F.Supp. 52, 53 (N.D.N.Y.1982) (consideration given in the form of cash and an assumption of a mortgage for the acquisition of taxpayer's property that was only forty-five percent of the property's fair market value was not "adequate and full consideration"); *United States v. Paladin*, 539 F.Supp. 100, 103 (W.D.N.Y. 1982) ("[b]ecause the assignment of the insurance proceeds ... was supported by consideration in the amount of only one dollar, it was not supported by adequate and full consideration"); *District Divine Science Church of Allen County v. United States*, 80–1 U.S.T.C. ¶ 9119, 1979 WL 1523 (N.D.Ind. December 4, 1979) (consideration in the form of a mortgage assumption worth $42,794.19 in exchange for a purchase of property worth at least $59,000 was not adequate and full consideration).

Accordingly, the court must compare the value of the consideration given by Kelly and Mary to the "true value" of the property. The findings of fact made at trial pursuant to Fed.R.Civ.P. 52(a) reveal that Nancy conveyed the Property to Kelly and Mary for their assumption of two mortgages on the Property with an outstanding value of $57,-797.94. This and one dollar are the only values for consideration that have been put forth on the record. Additionally, the assessed value of the Property at the time of

the 1982 transfer was found at trial to be $85,657.00. *United States v. McCombs–Ellison*, 826 F.Supp. at 1496 n. 24, 1497; *see also, United States v. McCombs*, 30 F.3d at 327. Thus the purported value of the consideration is 67% of the purported value of the property.

Proceeding on remand based upon these findings of fact would raise the issue of whether $57,797.94 was "adequate and full consideration" for a purchase of property valued at $85,657.00. Although this seems to be a simple enough comparison, neither the government nor the defendants feel that these are the proper values to use in resolving the "adequate and full consideration" issue. Both parties do agree that no new evidence should be submitted in the case for determination on remand. Government letter dated October 7, 1994 at 5;[7] defendants' letter dated September 30, 1994 at 1 ¶ 3 (*citing, United States v. McCombs*, 30 F.3d at 329). But they both assert that factors calling for an adjustment of these figures may be inferred from findings of fact already in the record.

The only direction given by the Second Circuit for remand on the "adequate and full consideration" issue was that it be determined as a matter of federal law. The court stated:

> ... on remand, the district court should be guided in its analysis of whether Mary and Kelly are "purchasers" under section 6323(a) by applicable federal, rather than state, law.

*United States v. McCombs*, 30 F.3d at 330 (*citing, United States v. Paladin*, 539 F.Supp. at 103 ["(t)he requirement of adequate and full consideration (under section 6323[h][6] ) is a matter of federal rather than state law and must be strictly applied"] [citations omitted] ). The Second Circuit did not advise specifically how the consideration and property value are to be measured. By contrast, it did so in respect to the determination of the "fair consideration" issue under

7. The government asked in its petition for rehearing to the Second Circuit, that it be able to present more evidence on this issue of the Prop-

erty's fair market value. Petition for Rehearing at 7. It now apparently abandons that request, judging by the position taken in its letter.

New York fraudulent conveyances law. *United States v. McCombs*, 30 F.3d at 327.

The factors cited by the parties calling for an adjustment of the "adequate and full consideration" equation, the comparison of consideration to property value, will be analyzed below to determine whether they are proper considerations under federal law and also whether they are established findings of fact in the record.

### 1. *Value of Consideration*

■ The parties disagree over how to measure the value of the consideration given by Kelly and Mary in exchange for the Property. The consideration stated in the deed was the assumption of the two mortgages on the property with an outstanding value of $57,797.94. Defendants ·have shown by a preponderance of the evidence that the mortgage assumptions should be counted at face value in determining whether they gave "adequate and full consideration" in acquiring the Property.

The issue is whether mortgage assumptions given as consideration by transferees should be measured at face value in determining "adequate and full consideration" under section 6323(h)(6), where the original mortgagor was not released from personal liability to the mortgagees, and the transferees had to borrow $53,000 from their father to pay off the mortgages less than two years after the transfer.

In order to qualify as a "purchaser" under section 6323(a), the consideration given in exchange for a conveyance of a taxpayer's property must be "adequate and full consideration in money or money's worth." 26 U.S.C. § 6323(h)(6). The term "money or money's worth" encompasses "money, a security . . ., tangible or intangible property, services and other consideration reducible to a money value." 26 C.F.R. § 301.6323(h)–1(a)(3). Mortgage assumptions have been measured at face value under federal law when determining the value of consideration. *See, Enochs v. Smith*, 359 F.2d 924, 926 (5th Cir.1966) (assumption of liability by assignee of taxpayer's property treated at face value for evaluating consideration under section 6323[a] [*overruled on other grounds by*, 26

U.S.C. § 6323(h)(6) ] ); *United States v. Mac Cement Finishing Corporation*, 546 F.Supp. at 53 (assumption of mortgage by transferee of taxpayer's property counted at face value for measuring consideration); *District Divine Science Church of Allen County v. United States*, 80–1 U.S.T.C. ¶ 9119, 1979 WL 1523.

The defendants contend that the mortgage assumptions should be measured at face value because the Second Circuit measured them at face value in its decision. This is not entirely correct. The Second Circuit's determination in this respect was based upon New York law for the fraudulent conveyance claim. This analysis was for the 1984 assessment only. The appellate court, however, directed this court to make the purchasers determination under federal law.

The government next argues that the mortgage assumptions should be counted at less than face value for two reasons. First, the assumptions should only be valued to the extent that the original mortgagor, Nancy, was released from liability to the mortgagees. Government letter dated September 23, 1994 at 2–3. Second, according to the government's theory, Kelly's and Mary's inability to pay off the mortgages after the assumption of liability means that the consideration was not in "money or money's worth" because an empty promise is not reducible to a money value. It asserts that this inability to pay under the assumptions should render the consideration valueless. *See* annotation, *Assumption of Mortgage as Consideration for Conveyance Attacked as in Fraud of Creditors*, 6 A.L.R.2d 270, 274 (standing for the proposition that under state law a grantee's inability to pay an assumed debt "will in some cases be sufficient to set aside an conveyance.") Additionally, the government contends that this factor should be considered in valuing the consideration under federal law, because this factor is considered in determining whether a conveyance is fraudulent under state law. *See, Government's petition for rehearing*, at 7–8; *United States v. Chapman*, 756 F.2d 1237, 1241 n. 3 (5th Cir.1985) (Texas law of fraudulent conveyances); *Midland–Guardian of Pensacola, Inc. v. Carr*, 288 F.Supp. 499, 501 (E.D.La.

1968) (Louisiana law); *United States v. Troyer*, 1991 WL 207474 (N.D.Ind.1991) (Indiana law), *aff'd without published opinion*, 983 F.2d 1074 (7th Cir.1992); *Schmitt v. Morgan*, 98 A.D.2d 934, 471 N.Y.S.2d 365 (3d Dep't. 1983) ("fair consideration" under New York Debtor and Creditor Law § 273), *appeal dismissed*, 62 N.Y.2d 914, 479 N.Y.S.2d 9, 467 N.E.2d 893 (1984). None of these cases, however, speak to valuation of consideration under section 6323(a), (h)(6) or any other federal statute.

Finally, the government asserts that, because it is defendants' burden to prove that the consideration was adequate and have not done so, the government's argument should prevail. The government points to facts in the record that demonstrate Kelly's and Mary's inability to pay. First, the outstanding balance on the Marine Midland mortgage increased after the property was transferred, until Robert loaned them the money to pay it off. Government's letter dated October 7, 1994 at 5. The amount owed on the Marine Midland mortgage in March, 1983, was $51,621.68 (it is not clear whether this figure includes both principal and interest or just principal). Trial Exhibit 13, Civil Action Narrative Report prepared by Internal Revenue Officer Richard P. Shimko, dated September 19, 1985. At the time of the November, 1984 discharge of the mortgage, the amount of principal and interest due was $55,000. *Id.* Robert was given a mortgage on the property securing $53,000 in January, 1985. Additionally, there is no indication in the record that either of the mortgagees released Nancy from personal liability after the assumptions by Kelly and Mary. Nonetheless, it is inconclusive whether these factors should be applied under federal law.

Defendants counter this argument by saying that Kelly's and Mary's inability to pay, or Nancy's liability on the mortgage are not proper issues because the Marine Midland mortgage was in fact paid off, and payments were made on the Columbia Bank mortgage as well. These were findings of fact made at trial.

While a transferee's inability to pay an assumed debt and the absence of a novation to the transferor by the creditor would seem to be relevant factors in measuring the value of consideration, as they are under various state fraudulent conveyance laws, it is not clear that federal law applies these factors. The government has suggested that this issue may require briefing, over and above the correspondence submitted by the parties for remand. Nevertheless, the court finds that the mortgage assumptions should be counted at face value since they were in fact paid off.

Of course it would be unnecessary to reach this issue if the court determines that $57,797.94 of consideration in exchange for property worth at least $85,657.00 is not "adequate and full consideration." Before that decision can be made, it must also be determined how federal law properly measures property value under section 6323(a), (h)(6).

### 2. *Value of the Property*

■ The analysis of "adequate and full consideration" also requires a determination of the value of the property acquired by a transferee. The parties disagree over both the factual findings as to the property value itself and the correct standard at which to measure the property value in this equation—fair market value or forced sale value.

Stepping away from the parties' disagreement for a moment, IRS regulations instruct that "adequate and full consideration" under 26 U.S.C. § 6323(h)(6) means that the consideration given for a transaction must bear "a reasonable relationship to the *true value* of the interest in the property acquired." 26 C.F.R. § 301.6323(h)–1(f)(3) (emphasis added). Therefore, "the *true value* of the interest in the property acquired[,]" by Kelly and Mary must be ascertained.

There has been little case law under section 6323(h)(6) discussing how to measure the true value of an interest in real property. Fair market value has been used as a benchmark. *See, United States v. Mac Cement Finishing Corporation*, 546 F.Supp. at 53 (decision based upon parties' stipulated facts). Neither the statute nor the regulation mention the terms fair market value or forced sale value. Presumably, either value could be used in a particular case if it reflects the true value of the real property.

The government claims that the fair market value is the correct standard to use and that that value is $110,000. Government letter dated September 23, 1994 at 3–4. Defendants claim that $85,657 is the established fair market value of the Property. Defendants' letter dated September 30, 1994 at 1. Defendants further assert that forced sale value is the appropriate standard because, *inter alia:* (1) the Second Circuit required this value to be used for the fraudulent conveyance issue and did not intend to have conflicting property values between the government's two claims; and (2) Nancy was under a compulsion to sell the property in 1982 due to impending foreclosure on the property's mortgages. Defendants' letter dated September 30, 1994 at 1–2. As for determining forced sale value, the defendants' claim that it should be no more than 70% of fair market value. *Id.* at 3. Defendants arrived at this figure through an interpretation of an Internal Revenue Service collection manual. *Id.* (attachment). The government's evidence at trial puts the forced sale value at 80% of fair market value. Trial Exhibit 13.

Again, the regulation does not set either value as the benchmark. Therefore, it is appropriate to analyze the evidence presented at trial to determine what the true value of the interest in the property acquired by Kelly and Mary. It must also be kept in mind that defendants have the burden of proof to show that they are "purchasers."

At trial, the court found the value of the property to be at least $85,657. *United States v. McCombs–Ellison,* 826 F.Supp. at 1496 n. 24, 1497. The government produced documentary evidence of a higher fair market value but the court did not accept this because the government's figure was not entirely accurate and there was no testimonial evidence to support it. *Id.* Additionally, the government produced Nancy's statement in an IRS form from January, 1983, that stated the current value of the property to be $110,-000. Trial Exhibit 22.[8] Nonetheless, the $85,657 figure was not appealed and the Sec-

ond Circuit did not disturb this finding of fact. Therefore, the $85,657 figure should be used on remand.

Now that the fair market value of the property has been established, it must be determined whether the fair market value or the forced sale value represents the true value of the interest acquired in the Property. The defendants' argument to use forced sale value, merely because the Second Circuit directed the use of such standard for the fraudulent conveyance claim, is not persuasive. The fraudulent conveyance issue is a matter of New York law. The Second Circuit directed this court to decide the section 6323(a) issue under federal law. Federal law does not mandate using forced sale value, as apparently the Second Circuit believed that the New York law of fraudulent conveyance does.

Additionally, defendants have not otherwise shown that a forced sale value should be applied. They argue that this value is appropriate because bank foreclosure on the Property's mortgages was imminent before the transfer to Kelly and Mary. As indicated in the report of an IRS agent, Nancy stated to him that she transferred the property to her daughters because she was unable to make the mortgage payments. Trial Exhibit 13, ¶ 4. This is insufficient to satisfy defendants' burden to show that a forced sale value should be applied, in that it does not show that the Property was not worth fair market value to Kelly and Mary. Defendants did not put on any evidence at trial in support of the Property's forced sale value. Furthermore, Kelly and Mary have not asserted that they are bona fide bargain purchasers to warrant any discount in the fair market value. Therefore, based upon the evidence at trial, the true value of the interest in the property acquired by Kelly and Mary is $85,-657.

The value of the consideration is $57,797.94 and the value of the interest acquired in the property is $85,657. The consideration is 67

---

8. Defendants object to this evidence as hearsay because Nancy's statement cannot be entered as an admission against Kelly and Mary. Defendants' letter dated October 14, 1994 ¶ 14. The government disagrees with this hearsay contention. Government letter dated September 23, 1994 at 3.

percent of the property value. This consideration does not bear "a reasonable value to the interest in the property acquired." *See,* 26 C.F.R. § 301.6323(h)–1(f)(3). Kelly and Mary did not, therefore, give "adequate and full consideration" for the conveyance. Hence, they are not "purchasers" under section 6323(a) and do not have priority over the 1982 federal tax lien.

### III. *1984 Tax Lien*

The government has sought to enforce its 1984 tax lien on the Property by setting aside the 1982 conveyance from Nancy to Kelly and Mary as fraudulent under New York law. It has put forth two theories in support of its claim. Its first argument is that the conveyance was constructively fraudulent under section 273 of New York Debtor & Creditor Law because *inter alia,* it was made for inadequate consideration. Second, the government contends that the conveyance should be disallowed because Nancy had actual intent to defraud the government from recovering its unpaid withholding taxes. Setting aside the conveyance under either theory is necessary for the government to enforce its 1984 tax lien on the Property. Since the unpaid tax was assessed after the 1982 conveyance, the Property did not belong to Nancy at the time of assessment. Therefore the lien could not attach to it. *See,* 26 U.S.C. §§ 6321, 6322.

### A. *Section 273 Claim*

■ Section 273 provides:

Every conveyance made and every obligation incurred by a person who is or will be thereby rendered insolvent is fraudulent as to creditors without regard to [her] actual intent if the conveyance is made or the obligation is incurred without a fair consideration.

New York Debtor & Creditor Law § 273. The government has the burden of proof on the element of fair consideration. *United States v. McCombs,* 30 F.3d at 326. The Second Circuit corrected a conclusion of law in the Verdict and Opinion after trial that allocated this burden to the defendants. *Id.* at 323; *United States v. McCombs–Ellison,* 826 F.Supp. at 1496.

■ In order to succeed on its claim, the government must prove that there was a conveyance from Nancy to Kelly and Mary; that Nancy was insolvent or would have become insolvent after the transfer; and that the conveyance was not made for fair consideration. The first two elements are not in dispute. Therefore, the only element at issue on remand is whether the conveyance was made for fair consideration. *United States v. McCombs,* 30 F.3d at 323.

Fair consideration is defined in New York Debtor & Creditor Law § 272. That section provides that:

Fair consideration is given for property, or obligation,

a. When in exchange for such property, or obligation, as a fair equivalent therefor, and in good faith, property is conveyed or an antecedent debt is satisfied, or

b. When such property, or obligation is received in good faith to secure a present advance or antecedent debt in amount not disproportionately small as compared with the value of the property, or obligation obtained.

New York Debtor & Creditor Law § 272. This determination must be made upon a review of the particular facts and circumstances of each case. *Orbach v. Pappa,* 482 F.Supp. 117, 119 (S.D.N.Y.1979) (*citing Halsey v. Winant,* 258 N.Y. 512, 523, 180 N.E. 253 [1932], *cert. denied,* 287 U.S. 620, 53 S.Ct. 20, 77 L.Ed. 539 [1932]). As section 272 implies, it is necessary to compare the value of the consideration to the value of the property.

The Second Circuit Court of Appeals directed that:

"[i]n our view, therefore, the government's fraudulent conveyance claim under section 273 rises or falls on whether *it* can prove that consideration of $57,797.94 is disproportionately unequal to the value of the Property as considered in the context of a forced foreclosure proceeding."

*United States v. McCombs,* 30 F.3d at 327.

In vacating this court's judgment on the section 273 issue, the Second Circuit found that the court made an incorrect ruling of

law and an erroneous factual finding. The incorrect legal ruling was with regard to the burden of proof issue in the fair consideration analysis. The erroneous factual finding made at trial was that the daughters took the Property subject to the Marine Midland mortgage. The Second Circuit explicitly stated that it was only reviewing the fair consideration issue, "simply to correct a factual finding by the magistrate judge that we believe to be both 'clearly erroneous' and material to the determination that the consideration was not fair under section 273." *Id.* at 326. The finding that the Property was worth $85,657 was not questioned by the Second Circuit, nor was the application of that property value to the determination of the fair consideration issue. Furthermore, the Second Circuit referred to "fair market value" several times during its discussion of section 273. Nevertheless, the Second Circuit instructed this court to now use another figure in the fair consideration equation; one that reflects "the value of the Property as considered in the context of a forced foreclosure proceeding." *Id.* at 327. Accordingly, such a figure will be used in the analysis on remand.

As established at trial, the value of the Property was found to be "at least $85,657." *United States v. McCombs–Ellison,* 826 F.Supp. at 1497. The government put forth higher figures as being the value of the property, but these were found to be not credible. *Id.* at 1496 n. 24. Whereas the parties have both asserted in correspondence to the court after remand of this case that no new evidence should be considered, the $85,657 figure should be used on remand in formulating the value of the Property in the context of a forced foreclosure proceeding.

Now before the court are two possible measurements for determining the forced sale value of the Property. The defendants argue that this value should be no more than 70% of the Property's fair market value, while government evidence submitted at trial puts the measurement at 80% of fair market value.[9] The 80% measurement should be followed because it is the only figure actually in evidence. Trial Exhibit 13.

■ The defendants' argument in support of using the 70% figure to measure the forced sale value is that an IRS Manual on collection procedures puts the forced sale value at no more than 70% of fair market value. *See,* Defendants' letter dated September 30, 1994 (attachment). Defendants claim that, since this is an Internal Revenue Service manual, its content should be taken by the court as an admission against the government's interest. It further states that the court should take judicial notice of the measurement of forced sale value stated therein.

A court may take judicial notice of a fact at any time during a proceeding. Fed.R.Evid. 201(f). This rule helps defendants because their information was not entered as evidence at trial. Consequently, it would not be proper for the court to make this further finding of fact were it not to conduct further evidentiary hearings, unless it took judicial notice of this fact. Nevertheless, it is not proper for the court to take judicial notice of this fact. A forced sale value of property set at 70 percent of fair market value is "subject to reasonable dispute" in that it is not "generally known within the territorial jurisdiction of the court[,]" and it is not "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Fed.R.Evid. 201(b). Therefore, the court should not take judicial notice of this fact. Since the 70% measurement should not be considered for this reason, the only evidence of forced sale value in the record is the 80% value contained in the government's proof. Accordingly, the 80% of fair market value measurement is accepted by the court.

To calculate the value of the Property in the context of a forced foreclosure proceeding, the court must take 80% of the $85,657

---

9. Important to this analysis is the fact that no finding of the "fair market value" of the Property was made at trial. The figure of "at least $85,657[,]" *see,* 826 F.Supp at 1497, represents what may be the property's "fair salable value" under New York Debtor & Creditor Law § 271(1). This is not necessarily the "fair market value." Therefore, it may be inaccurate to calculate the forced sale value, which apparently requires a preliminary finding of the fair market value, based on the $85,657 figure.

value of the Property. This results in a figure of $68,525.60. Hence, the determination of fair consideration becomes whether $57,797.94 is disproportionately small to the $68,525.60 forced sale value of the Property. This consideration is 84% of the appropriate value of the Property. This consideration value does not appear to be disproportionately small to the value of the Property. Therefore, the government has not upheld its burden of proof on this issue.

■ Although the government has not proven that the value of the consideration was inadequate, the conveyance may still be set aside if the government can prove that the Property was conveyed with a lack of good faith. New York Debtor & Creditor Law § 272(b);[10] *Southern Industries, Inc. v. Jeremias,* 66 A.D.2d 178, 182, 411 N.Y.S.2d 945 (2d Dep't.1978) ("but in addition [to the exchange of equivalent value], [§ 272(a) ] requires that the transfer must be made in 'good faith' ").

■ Therefore, the next issue presented is whether the government has sustained its burden of proof to show that the defendants did not act in good faith with respect to the 1982 conveyance.[11] Good faith, as interpreted under § 272, means, "a failure to deal honestly, fairly and openly." *Southern Industries, Inc. v. Jeremias,* 66 A.D.2d at 183, 411 N.Y.S.2d 945. This good faith must be present with both the transferor and the transferee. *Julien J. Studley, Inc. v. Lefrak,* 66 A.D.2d 208, 213, 412 N.Y.S.2d 901 (2d Dep't.1979), *aff'd,* 48 N.Y.S.2d 954, 425 N.Y.S.2d 65, 401 N.E.2d 187 (1979); *In re Ahead By A Length, Inc.,* 100 B.R. 157, 169 (Bkrtcy.S.D.N.Y.1989); *In re Checkmate*

*Stereo & Electronics, Ltd.,* 9 B.R. 585, 617 (Bkrtcy.E.D.N.Y.1981); *aff'd,* 21 B.R. 402 (E.D.N.Y.1982). A lack of good faith may be found in a situation where a transferee knows of the transferor's poor financial condition when the conveyance takes place. *In re Fill,* 82 B.R. 200, 218 (Bkrtcy.S.D.N.Y. 1987); *In re Checkmate Stereo & Electronics, Ltd.,* 9 B.R. at 617. Additionally, a lack of good faith can be shown where there is knowledge that the conveyance "will hinder, delay, or defraud others." *Southern Industries, Inc. v. Jeremias,* 66 A.D.2d at 183, 411 N.Y.S.2d 945 (*citing, Sparkman & McLean Company v. Derber,* 4 Wash.App. 341, 481 P.2d 585 [Wash.App.1971] ).

The government has not sustained its burden of proof to show that either Nancy, or Kelly and Mary, lacked good faith in the conveyance to show a lack of fair consideration under section 272.[12] It is established that Nancy was willful in her failure to pay withholding taxes, resulting in tax liability underlying both the 1982 and 1984 tax liens. *United States v. McCombs,* 30 F.3d at 320–21. It was not clear from the record, however, when exactly she became aware of the responsibility to pay these taxes, knowledge of such responsibility which resulted in the finding of willfulness. *United States v. McCombs–Ellison,* 826 F.Supp. at 1490. The findings of fact in this case also show that an IRS agent left a calling card at Nancy's home eight days before the conveyance of the Property. This calling card informed Nancy of the 1982 tax assessment liability. The record also indicates that Nancy's purported reason for making the 1982 conveyance was that she was unable to keep making

---

10. This good faith requirement is present in both subparagraphs of New York Debtor & Creditor Law § 272.

11. Even in light of the Second Circuit's direction on remand, the burden of proof could still shift to the transferees to show a presence of good faith. *See, In re Fill,* 82 B.R. 200, 218–19 (S.D.N.Y.1987) (burden on transferee to prove fair consideration due to intra-family conveyance). A fair reading of the appellate court's opinion only directs the burden of proof to be placed on the government for proving the first element of fair consideration (that the consideration was not disproportionately small to the value of the property), but not necessarily on the

second element of good faith. Good faith was not addressed in this context at trial. *United States v. McCombs,* 30 F.3d at 326 n. 1.

12. The consideration of Nancy's intent to hinder creditors in this analysis of fair consideration, overlaps with the analysis of actual intent to defraud under New York Debtor & Creditor Law section 276 (although the burden of proof on the government is greater in the latter analysis). Therefore, the good faith analysis may also require the bootstrapping of the 1984 tax lien with the 1982 tax lien as suggested by the Second Circuit in its direction on remand. *United States v. McCombs,* 30 F.3d at 328–29 n. 3.

payments on the two mortgages on the property. Trial Exhibit 13, ¶ 4. Additionally, Nancy was going to be married to Ellison shortly after the 1982 conveyance. *See, United States v. McCombs*, 30 F.3d at 328.

These facts do not demonstrate that the daughters lacked good faith in receiving the property. Although Kelly and Mary knew of Nancy's inability to make payments on the mortgages on the Property, the government has not shown that they had knowledge that the conveyance would hinder creditors' collection of their debts. The daughters assumed the Columbia Bank and Marine Midland mortgages. Therefore, these creditors would not ostensibly be hindered in the collection of their debt. Since the government has not shown that the daughters knew of the tax assessments, they could not have knowledge that the conveyance would hinder the government as a creditor. Furthermore, the pending marriage of Nancy to Ellison at the time of the conveyance provides an inference of good faith to the conveyance. This demonstrates that the Property was conveyed to keep title in the family and not to hinder the collection of debts by creditors.

The government has also not sustained its burden to prove that Nancy lacked good faith in the 1982 conveyance with respect to the 1984 tax lien. They have not shown that Nancy had knowledge that the 1982 conveyance would hinder the government in the collection of the 1984 tax lien.

It has been established that Nancy willfully failed to pay withholding taxes, and this partially resulted in the assessment of the 1984 tax lien (unpaid withholding taxes for the period of October 1, 1981 through June 30, 1982). *United States v. McCombs*, 30 F.3d at 320–21. This conclusion was reached because she knew that taxes were due and that she could not afford to pay them, yet paid other creditors at the time. *Id. United States v. McCombs–Ellison*, 826 F.Supp. at 1490–91.

Significant to the analysis of Nancy's good faith is that the assessment for the 1984 tax lien was obviously made after the 1982 conveyance, April 16, 1984. At trial, the court found that it was not clear exactly when Nancy became aware of her responsibility to

pay the withholding taxes. *United States v. McCombs–Ellison*, 826 F.Supp. at 1490. Although the record shows that she had knowledge of the 1982 tax lien at the time of the 1982 conveyance, this does not mean she had knowledge of the 1984 tax lien at this time, or its underlying liability for unpaid withholding taxes for the period of October 1, 1981 through June 30, 1982.

It is not clear from the evidence at what time Nancy became aware of the responsibility to pay the taxes due on the 1984 assessment. The government has not shown that Nancy had knowledge that the 1982 conveyance would hinder the government in the collection of its 1984 tax lien. Hence, the government has not shown that Nancy lacked good faith in the conveyance with respect to the 1984 tax lien. Consequently, there is not sufficient proof to show that the conveyance was made for a lack of fair consideration, and the government cannot set aside the 1982 conveyance to enforce the 1984 tax lien under a section 273 constructive fraud theory.

### B. *Section 276 Claim*

The government has also sought to set aside Nancy's conveyance to her daughters and to enforce the 1984 tax lien on the theory that Nancy had an actual intent to defraud the government from collecting the tax debt, under section 276 of New York Debtor & Creditor Law.

Section 276 provides:

Every conveyance made and every obligation incurred with actual intent, as distinguished from intent presumed in law, to hinder, delay, or defraud either present or future creditors, is fraudulent as to both present and future creditors.

New York Debtor & Creditor Law § 276. The burden of proof is allocated to the party who seeks to set aside the conveyance. *United States v. McCombs*, 30 F.3d at 328 (*citing, Marine Midland Bank v. Murkoff*, 120 A.D.2d 122, 126, 508 N.Y.S.2d 17 [2d Dep't.1986], *appeal dismissed*, 69 N.Y.2d 875, 514 N.Y.S.2d 1029, 507 N.E.2d 322 [1987] ). Furthermore, proof must be shown by clear and convincing evidence. *ACLI Government*

*Securities, Inc. v. Rhoades,* 653 F.Supp. 1388, 1394 (S.D.N.Y.1987) *aff'd,* 842 F.2d 1287 (2d Cir.1988).

■■■■■ Factors from which a fraudulent conveyance may be inferred under section 276 include, "the relationship among the parties to the transaction and the secrecy of the sale, or [the] inadequacy of consideration and hasty, unusual transactions." *United States v. McCombs,* 30 F.3d at 328 (*quoting, In re Grand Jury Subpoena Duces Tecum Dated September 15, 1983,* 731 F.2d 1032, 1041 [2d Cir.1984] [*citing United Parcel Service, Inc. v. Jay Norris Corporation,* 102 Misc.2d 231, 233, 423 N.Y.S.2d 125 (N.Y.Sup.Ct.1979); *Gafco, Inc. v. H.D.S. Mercantile Corporation,* 47 Misc.2d 661, 664–65, 263 N.Y.S.2d 109 (N.Y.C.Civ.Ct.1965)]). Actual intent to defraud can also be shown by the "transferor's knowledge of the creditor's claim and his own inability to pay it." *ACLI Government Securities, Inc. v. Rhoades,* 653 F.Supp. at 1394. The adequacy of the consideration in the transaction is not an issue. *United States v. McCombs,* 30 F.3d at 327–28.

The government must show, therefore, that Nancy intended to defraud the government from collecting the taxes underlying the 1984 tax lien. Because it is not clear from the facts that Nancy had knowledge of her indebtedness to the government for the taxes comprising the 1984 tax lien at the time of the conveyance, the government has not upheld its burden of proof.

There are two tax liens at issue. The 1982 tax lien was for unpaid withholding taxes incurred by Spinnaker Pole from October 1, 1979 through September 30, 1981. The 1984 tax lien is comprised of unpaid withholding taxes for the period from October 1, 1981 through June 30, 1982. The assessment for the 1982 tax lien was made by the IRS on June 14, 1982. The assessment for the 1984 tax lien, however, was not made until April 16, 1984.

■■■■ A contingent liability for withholding taxes arises in a responsible party when the taxes are withheld from an employee's wages. *Kalb v. United States,* 505 F.2d 506, 509 (2d Cir.1974), *cert. denied,* 421 U.S. 979, 95 S.Ct. 1981, 44 L.Ed.2d 471 (1975). A responsible party is personally liable for payment of the withholding taxes if she was willful in not paying them. 26 U.S.C. § 6672(a). Although Nancy was found to be willful in not paying withholding taxes for Spinnaker Pole, the government has not shown that she knew of her indebtedness to the government for the taxes comprising the 1984 tax lien at the time of the 1982 conveyance.

The unpaid withholding taxes comprising the 1984 tax lien were due when the wages were paid to the employees for that tax period, sometime after June 30, 1982. The record is not clear as to when this occurred. This is not as important as is the time that Nancy realized the taxes were due. It is also not clear at what time Nancy became aware that withholding taxes were due and that she was responsible for paying them. *United States v. McCombs–Ellison,* 826 F.Supp. at 1490. Nancy did know of her indebtedness to the government for the 1982 tax lien, when she conveyed the Property on September 15, 1982. An IRS agent had left a calling card at her residence eight days before this conveyance. There is no indication, however, that she was alerted to the fact that subsequently assessed withholding taxes were past due at this time.

It is only Nancy's actual intent to defraud the government with regard to the collection of taxes in the 1984 tax lien that is at issue, and not the government's collection of the 1982 tax lien. The effect of the conveyance upon the government's collection of the 1982 tax lien is irrelevant. The government has only sought to enforce the 1984 tax lien under the section 276 theory. Additionally, the Second Circuit noted in its opinion on the appeal that the 1982 and 1984 tax liens "are temporally distinct debts[.]" *United States v. McCombs,* 30 F.3d at 329 n. 3. According to this reasoning, Nancy's knowledge of the former debt does not necessarily imply knowledge of the latter. Therefore, it is necessary to determine whether at the time of the 1982 conveyance, Nancy was aware that the taxes comprising the 1984 tax lien were due.

The government disputes the Second Circuit's observation that the 1982 and 1984 tax

liens are distinct debts.[13] Government letter dated September 23, 1994 at 5. It maintains that Nancy's intent to defraud should be determined by looking at all of the facts and circumstances of the case. *Id.* Presumably, this means that Nancy's intent can be determined by looking at her knowledge of the 1982 tax lien and her subsequent actions.

In support of this position, the government argues that the two tax liens are not distinct debts, "but rather a gradually accumulating liability for transactional taxes over an unbroken continuum." Government letter dated September 23, 1994 at 5. This observation comports with the nature of withholding tax liability. *See, Kalb v. United States,* 505 F.2d at 509 (liability for withholding taxes arises at the time that the taxes are withheld from paid wages). Indeed, the two tax liens in this case are for unpaid withholding taxes from two contiguous periods of time.

The question as to Nancy's actual intent thus becomes whether it is a proper inference to conclude that, when Nancy got notice that withholding taxes were due under the 1982 assessment, she also became aware that withholding taxes were due for a subsequent contiguous period, although they had not yet been assessed The evidence stated above of Nancy's knowledge of her indebtedness to the government for the taxes under the 1984 tax lien is not strong enough to support a conclusion by clear and convincing evidence of her actual intent to defraud.

Admittedly, there is some indicia of fraud surrounding the 1982 conveyance. Nancy did have a close relationship with the transferees, her daughters, and she continued to live on the property after the transfer. Evidence also demonstrates that Nancy was unable to pay the tax assessments. *United States v. McCombs–Ellison,* 826 F.Supp. at 1498. This showing is insufficient to meet the burden of proof in light of the uncertainty surrounding Nancy's knowledge of the

1984 assessment liability at the time of the conveyance. Furthermore, there is evidence in the record to rebut the government's showing of fraud. *See, In re Fill,* 82 B.R. at 226. The record indicates that Nancy's purported reason for making the 1982 conveyance was that she was unable to keep making payments on the two mortgages on the property. Trial Exhibit 13, ¶ 4. Additionally, Nancy was going to be married to Ellison shortly after the 1982 conveyance and wanted to keep the property in the McCombs family. *See, United States v. McCombs,* 30 F.3d at 328. These facts show reasons for the transfer, other than to defraud the government.

The government's proof does not fail because the tax assessment occurred after the conveyance of property. *See, United States v. Cohn,* 682 F.Supp. 209, 217 (S.D.N.Y.1988). It fails because of the uncertainty of Nancy's knowledge of her indebtedness to the government for the 1984 tax lien. The other indicia of fraud surrounding the 1982 conveyance are not enough to show that Nancy had actual intent to defraud the government in the collection of the 1984 tax lien.

Since the government has not proven that the 1982 conveyance should be set aside under either the section 273 or section 276 theories, the 1984 tax lien may not be enforced against the Property.

## CONCLUSION

The government has priority over defendants Kelly McCombs and Mary McCombs with regard to the 1982 tax lien because defendants have not sustained their burden of proof to show that they are "purchasers" under section 6323(a). However, the government may not enforce the 1984 tax lien against Nancy McCombs–Ellison's former property, because the government has not sustained its burden of proof to show that the conveyance was constructively fraudulent

---

**13.** The Second Circuit suggested that you may want to consider "bootstrapping" Nancy's knowledge of the 1982 assessment to prove her actual intent to defraud the government in its collection of taxes for the 1984 tax lien. In its argument on remand, the government does not feel that the "bootstrapping" of the 1984 tax lien with the 1982 tax lien "is a real issue." Government letter dated September 23, 1994 at 5. Instead the government disputes the Second Circuit's characterization of the two tax liens as distinct debts. *Id.* At any rate, due to the government's position and that the Second Circuit's comment was only a suggestion, whether New York law permits the "bootstrapping" of these two debts need not be considered.

due to a lack of fair consideration under section 273, or that Nancy McCombs–Ellison had an actual fraudulent intent under section 276.

Kelly and Mary do not have priority over the 1982 federal tax lien because they have not sustained their burden of proof to show that they are "purchasers" under 26 U.S.C. § 6323(a). However, since the government has not proven that the 1982 conveyance was fraudulent under either the section 273 or section 276 theories and that it should be set aside, the 1984 tax lien may not be enforced against the Property.

Kelly and Mary are entitled to equitable subrogation under 26 U.S.C. § 6323(a) only to the extent of the difference between what Robert's $53,000 interest is and the amounts ultimately paid by Mary and Kelly to discharge the two prior mortgages on the Property. *United States v. Baran,* 996 F.2d 25, 29 (2d Cir.1993). This is ordered in the court's discretion, particularly in light of the discussion of equitable subrogation concerning Robert's interest by reference to the undisturbed findings of fact relative to Mary's and Kelly's lack of notice. *United States v. McCombs,* 30 F.3d at 330–33. Accordingly, the relative priorities are, contrary to the government's argument in its letter of October 7, 1994, as follows:

(1) First priority to Robert for $53,000

(2) Second priority to Mary and Kelly for the difference between Robert's $53,000 interest, and the amount Mary and Kelly paid to ultimately discharge the two prior mortgages on the Property, which may not necessarily be the $4,798 figure cited by the government but is easily settled by the parties from financial records;

(3) Third priority to the 1982 tax lien;

(4) Fourth priority to Mary and Kelly for the surplus.

The foregoing is the Decision and Order of this court.

SO ORDERED.